### LEE PASCHAL v. THE STATE.

No. 3366.    Decided December 13, 1905.

**Assault with Intent to Murder—Former Conviction—Doctrine of Carving.**

Where on trial for assault with intent to murder, the evidence showed that
defendant in one transaction made an assault upon his wife by throwing an
orange at her, by choking, by cutting her clothes off her person, and by drawing
a stick, which was a deadly weapon, upon her;. and defendant interposed his plea
of former conviction upon information for aggravated assault of the same trans-
action it was error for the court not to sustain said plea, as the State could
carve but once.

Appeal from the District Court of Hill. Tried below before Hon.
W. C. Wear.

Appeal from a conviction of assault with intent to murder; penalty,
two years imprisonment in the penitentiary.

The opinion states the case.

*Marshall & Jackson, L. C. Hill* and *C. F. Greenwood,* for appellant.

*Howard Martin,* Assistant Attorney-General, and *J. E. Clark,* County
Attorney, for the State.

BROOKS, JUDGE.—This conviction was for assault with intent to
murder; the punishment assessed being two years confinement in the
State penitentiary.

The evidence is substantially as follows: Appellant and his wife lived
at the village of Woodbury, and on the occasion in question she was
visiting at the home of Mrs. Riley, situated in the same village. Late
in the afternoon, appellant went to Mrs. Riley's home, called for his
wife, and insisted that she should accompany him home. She declined

to go, and after being repeatedly asked by appellant to go, and still declining, appellant then left and went off toward the village proper, and in about half an hour returned, called for his wife, and at this time had a paper sack in his hand. Mrs. Riley was milking the cow at the time. Appellant called for his wife several times, and when they got together he told her that he had some oranges he bought for her. She protested against taking the oranges, but he insisted that she accept them; and finally induced her to take one. Mrs. Riley testified that he then threw an orange at his wife, and struck her between the eyes with it, and she fell; that he then hit her with his fist, knocked her down and kicked her, and then threw a rock and hit a cow; that he then stamped and choked his wife; that the latter then went to the hog pen, and he hit her again; that appellant's wife and witness then started to the house, and at the fence appellant caught her again, and cut her clothes. They then went in the house and he began cutting her clothes with a knife again; that he jerked her to the floor and kicked her, and made as if he was going to kick her again. They then went into the south room; and appellant then went out into the yard and got a stick, came back into the room, and held the stick up over witness and appellant's wife, but never struck either one of them with it; that he was close enough to have struck his wife with it, but did not do so. On cross-examination witness said that while appellant was beating his wife with one hand, he was holding the knife in the other hand. On redirect examination, witness admitted that three different times appellant held the stick up as though he was going to strike his wife; and witness further said, "He could not have hit her without hitting me; he was afraid he would strike me; he never struck her; he never struck at any one." In another portion of her testimony witness claimed that the reason appellant didn't strike her with a stick was because he heard the dog bark. She admitted her prejudice and hatred toward defendant.

Miss Bigham testified that appellant threatened to kill his wife if she didn't take the orange; that he slapped her down and kicked her. She says positively that he did not strike her with an orange, and that after the first trouble appellant and his wife went behind the lot, and he choked her; and that this was just after the orange transaction. That Mrs. Paschal was lying on the ground on her face, while Mrs. Riley says she was lying on her back. Miss Bigham testified that appellant and his wife then went into the house, and he was demanding the clothes she had on, saying that he had bought them and was going to have them, and that "he jerked her skirt off, and began to jerk at her waist." That he then cut her clothes off; that witness went and called for protection. She saw appellant go out into the yard and get a stick, and then go into the house, but did not see him do anything with it. Her testimony shows that in a few moments after this, Lewallen came up, together with his boys from the field nearby. Lewallen was about two hundred yards distant, and he went directly to the

house, and the racket then ceased. Clarence Lewallen testified he was working about one hundred and twenty-five yards away, and saw and heard the racket at the cow lot; that he immediately called to his father and they went directly on to the house, and when they got there the racket was over and appellant was standing in front of the door. That appellant did not go back into the house any more. He fixes the time transpiring from the first trouble until he and his father reached the house and saw appellant standing in front of the door, at about five minutes, and says that would have been ample time for them to have gone from the field to the house; that they walked fast en route.

When the case was called for trial, appellant filed a plea of former conviction, setting up in proper legal form, that he (appellant) had previously been charged in the county court under a valid information with the offense of aggravated assault. The charging part of the information is as follows: "On or about the 27th day of April, 1905, * * * in said County of Hill and State of Texas, one Lee Paschal, late of said county and State, did then and there unlawfully in and upon Bertha Paschal, commit an aggravated assault,—the said Bertha Paschal being then and there a female, and the said Lee Paschal being then and there an adult male, against the peace and dignity of the State." The affidavit and information charging this aggravated assault are in legal and proper form. The evidence shows that the prosecution upon which the information was predicated grew out of the above stated facts. We hold that appellant's plea of former conviction is well taken. In Adams v. State, 16 Texas Crim. App., 162, the facts showed that appellant was charged with illegally marking and branding certain animals. Appellant, after pleading former conviction, in proper form, asked the court to charge the jury, as follows: "If you believe from the evidence that the animal charged to be illegally marked and branded in this case, was marked and branded at the same time and place as the animal charged to have been illegally marked and branded in the indictment in case number 622, the State of Texas against Charley Adams, on which indictment defendant has been tried and convicted, so as to make the marking and branding of the two animals one and the same transaction, or part of the same transaction, then, in that event, if the jury so believe, they will find the special plea of defendant true." In that case we held that the court erred in refusing to give said charge; and the court say: "It is well settled in cases of theft, that the stealing of different articles of property, belonging to different persons, at the same time and place, so that the transaction is the same, is but one offense against the State; and the accused cannot be convicted on separate indictments, charging different parts of one transaction, as if they were distinct offenses, as a conviction on one of the indictments bars a prosecution on the other. * * * We think this rule applies in this case with the same force and to the same extent as it would apply in a case of theft. We can perceive no reason why it should not. It mattered not whether one yearling was

Vol. 49 Crim.—8.

marked and branded first, or whether both were marked and branded at the same instant of time, and on the same identical spot of ground. The true inquiry was, did the marking and branding of the two yearlings in fact constitute one and the same transaction, although accomplished by separate acts? Suppose the defendant had been charged with the theft of the yearlings, and the proof had shown that he took them from a pen, that he drove one of them out of the pen, and turned and immediately but by a different act, drove out the other; would not this be the same transaction and but one offense? We think in such case a conviction of the theft of one of the yearlings would be a bar to an indictment for the theft of the other, and that it would make no difference that the yearlings were owned by different persons." The principle here laid down is amply supported by various decisions of this court. Quitzow v. State, 1 Texas Crim. App., 47; Simco v. State, 9 Texas Crim. App., 338; Grisham v. State, 19 Texas Crim. App., 504; Moore v. State, 33 Texas Crim. Rep., 166; Herrera v. State, 35 Texas Crim. Rep., 607.

Now, reverting to the facts of this case, we find that appellant made a ruthless assault upon his wife (1) by throwing an orange at her; (2) by choking; (3) by cutting her clothes off her person; and (4) by drawing a stick, which appears to have been a deadly weapon, upon her. However, the evidence shows that all of the matters were one and the same continuous act or transaction. We are not holding in this connection that appellant could not in the first instance have been prosecuted for an assault with intent to murder; but concede that he could, the prosecuting attorney has seen fit not to do so, but to prosecute for an aggravated assault. Where the prosecution is upon an information, the State can carve but once for the same transaction. This is one continuous transaction within the contemplation of the clause of the Constitution, which inhibits a second trial for the same offense; and being such, the State cannot be permitted to prosecute again for assault with intent to murder. The State can carve the minor part of the transaction and convict on that, or can carve the major part of the transaction and convict on that. However, the State can carve only the one time. Suppose appellant on the day in question had shot at his wife three several and distinct times: the time elapsing between each shot being such as the record here shows elapsed between the different acts of violence committed upon his wife. Could it be correctly insisted that he could be convicted of three separate distinct assaults with intent to murder? We think not. Or suppose, in the first instance, he had shot at his wife with a pistol, and then grabbed a shot gun and fired at her; and then shot at her with a rifle; and suppose all shots missed or hit her, as the case may be, would it be then insisted, if neither of said shots had killed her, that he could be convicted of three assaults with intent to murder. It follows from what we have stated above, that the learned trial court erred in not

sustaining appellant's plea of former conviction, and the judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*