NOBBIE CARR, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

455 S.W.2d 619.

Court of Criminal Appeals of Tennessee. May 12, 1970.

Certiorari Denied by Supreme Court June 15, 1970.

Hugh W. Stanton, Jr., Asst. Public Defender, James D. Causey, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., Donald D. Strother and James Allen, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

HYDER, Judge.

Nobbie Carr appeals his convictions for robbery by the use of a deadly weapon and carrying a dangerous

weapon. He was sentenced to twenty years in the penitentiary for the robbery conviction, and to six months in jail and a fifty dollar fine for carrying a weapon.

■ It is argued, in the eighth assignment of error, that the conviction for carrying a weapon must merge with the greater offense of robbery by the use of a deadly weapon, and with this we agree. These offenses were committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense, and they are susceptible to but one punishment. Patmore v. State, 152 Tenn. 281, 277 S.W. 892. The judgment of the lesser offense is stricken. See Walton v. State, Tenn. Cr. App., 448 S.W.2d 690.

George Matthews had been running a dice game in his home for some time, and during the night of March 7, 1969, and the early morning of March 8th, he and about ten to fifteen others were shooting dice in his kitchen. Four men came to the home, and three entered the kitchen where the game was in progress. These three intruders were armed; one with a sawed-off shot gun, one with a pistol, and the other with a razor. By using the weapons the three intruders robbed the participants in the dice game. George Matthews and three of the others in the game identified Nobbie Carr as the robber who had the shot gun. Andrew Bryant, who was playing in the game, testified that he had worked with the defendant for more than five months, and that he had known him before that. He made positive identification of Nobbie Carr as the man who held and used the shot gun in the robbery. The witnesses also testified that this defendant did most of the threatening of the victims. On March

16, 1969, the defendant was placed in a police line-up and there positively identified by George Matthews and two of the other participants in the dice game. No proof was presented by the defendant.

■ ■ It is contended in the first three assignments of error that the verdict is contrary to the law and the evidence and that the evidence preponderates against the verdict. The record fails to support these assignments of error. All of the evidence in this record supports the theory of the State that this defendant, along with others not apprehended, by using weapons, robbed the participants in the dice game. Certainly the defendant has not shown that the evidence preponderates against the verdict and in favor of his innocence, as he must do before we would be justified in reversing this conviction. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

It is next contended that the trial court erred in allowing the introduction of testimony as to the actions of others during the course of the robbery. It is argued that the trial judge allowed the prosecution witnesses to testify, in referring to the three robbers, that "he said," or that "they said," without requiring the witnesses to identify the speaker. The State replies that all of the intruders were aiders and abetters in this crime, that the record is clear concerning the defendant's participation in it, and that it is immaterial which one made the statements to those being robbed.

■ It is abundantly clear from this record that the defendant, with others, committed this robbery by using weapons. Nobbie Carr had a shot gun, and he waived it around in a threatening manner. The record is not clear as to which one of the intruders made certain state-

ments, but they were all active in the commission of the robbery; they were more than aiders and abetters in the crime. Under the circumstances we do not believe that it was error for the trial judge to allow the introduction of the statements made without requiring the identification of the speaker, because that would have been impossible. The victims were required to "hit the floor," and they were lying down most of the time the robbers were present.

The fifth and six assignments of error incorporate letters written by the defendant to the Attorney General, and to the trial judge. In the letters the defendant complains that his constitutional rights were violated and that the trial court erred in failing to direct a verdict of acquittal at the conclusion of the State's proof. The letters were incorporated in the record and the assignments of error were cited without argument by counsel for the defendant.

We have considered the assignments of error, and we have considered the letters from the defendant, and, other than the issue we have discussed concerning the trial and conviction of two offenses committed at the same time, we find no merit in the fifth and sixth assignments of error.

The seventh assignment of error asserts that the Bill of Exceptions prepared by the Criminal Court Clerk's Office from recordings taken during the trial is so inadequate as to deny the defendant a proper appellate review.

The defendant was represented in this trial and on his motion for a new trial by retained counsel, Mr. James

D. Causey. Mr. Causey also approved the Bill of Exceptions, with the following reservation: "with exceptions to those portions of the record that appear as inaudible as contained in the record herein." On the appeal in this Court the defendant is represented by the Public Defender.

■ It is true that the Bill of Exceptions contains several comments of the court reporter stating that portions of the record are "inaudible." We have considered each of these and find that practically all of them are concerning statements of witnesses which are of no importance in the determination of the guilt or innocence of the defendant. There are a few instances when the questioning of the witness is concerning the line-up identification of the defendant and the reporter states that his record is inaudible. But we are of the opinion that the record is sufficient to show that the line-up was properly conducted and that the defendant understandingly and voluntarily appeared in the line-up and waived the presence of an attorney after being sufficiently advised. The record contains waivers signed by the defendant at the time the line-up was conducted.

Further, counsel retained by the defendant made no apparent effort to reconstruct the portions of the record here complained of, either in narrative form or otherwise.

■■ Actually there is no contention that the line-up was irregular, illegal or unconstitutionally conducted. There is no assertion that the in-court identification of the defendant was tainted by the line-up identification. Nevertheless, because of the complaint made about the sufficiency of the record, we have considered these questions, and, as we have said, we find no reversible error.

In his brief and argument on behalf of the defendant, counsel appointed to represent the defendant in this Court speculates that perhaps the inaudibles would be favorable to the defendant if they were discernible, or, he says, they might not be favorable to him. In view of the fact that he had retained counsel present at the trial and until his Bill of Exceptions was filed, we believe that such counsel is under obligation to do more than speculate that there might be error if the record was perfect. Our Supreme Court has acknowledged that a defendant is entitled to a reasonable and sufficient record. See Hunter v. State, Tenn., 440 S.W.2d 1. Such a record was provided here.

We have read and studied this record and we have considered all assignments of error. Other than the eighth assignment of error, which we sustain, we overrule the assignments of error.

The judgment of twenty years in the penitentiary is affirmed.

The judgment of six months in jail and a fifty dollar fine is reversed and the charge of carrying a dangerous weapon is dismissed.

WALKER, P.J., and RUSSELL, J., concur.