Jesse Castillo OROSCO, Appellant,

v.

The STATE of Texas, Appellee.
(two cases).

Nos. 56876 thru 56878.

Court of Criminal Appeals of Texas,
Panel No. 1.

March 21, 1979.

Rehearings Denied Dec. 12, 1979.

Warren E. Hancock, Jr. and W. W. Kilgarlin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis M. Bell and Frank Harmon, Asst. Dist. Attys., Houston and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeals are taken from convictions for aggravated rape, aggravated robbery, and forgery. V.T.C.A. Penal Code Secs. 21.03, 29.03, and 32.21. Punishment was assessed at 40 years for the aggravated rape, 15 years for the aggravated robbery, and five years for the forgery.

All three offenses were tried together, and are all related to a single incident involving the prosecutrix.

The prosecutrix testified that on the day of the alleged rape and robbery she had taken one of her children to school, stopped at a convenience store to use a pay phone, and finally returned home. She testified that she used her car as transportation to and from each of the above places.

Later that morning at about 10:30 a.m., she answered a knock at her door. She went to the door and saw the appellant standing outside. The doorway was secured only by a locked screen at the time of the incident. She testified that the appellant asked to come in, but she refused.

According to the prosecutrix, the appellant then took a knife from his pocket and exposed the blade, again requesting entry. She unlocked the door, and the appellant entered, putting the knife away. The knife was not seen by the prosecutrix again.

The appellant requested a glass of water, which the prosecutrix got for him. He then grabbed her and told her he wanted to make love. The prosecutrix testified that

she nudged away but did not escape his grip. He told her to go upstairs.

The prosecutrix testified that once upstairs the appellant told her to take her clothes off, and to lie down on the bed. He then took his clothes off and had intercourse with the prosecutrix.

After they dressed the appellant asked if she had any money, to which she replied no. They then went downstairs, and the appellant said he was "going to take something." He unplugged her television and told her to go upstairs. When she returned downstairs, the appellant was gone, as was her television and checkbook.

The prosecutrix then drove to her husband's place of employment. Co-workers of her husband called the police, and she was taken to the hospital and examined. She testified that the examination revealed semen in her vagina. The prosecutrix further testified that she was not the appellant's wife, did not consent to the intercourse, and submitted because she was afraid.

On cross-examination, she stated that she was separated from her husband at the time of the offense and was in the process of getting a divorce. She also related that some three months before the incident she had overdosed on sleeping pills.

An employee of a Houston supermarket testified that on the day following the above events she cashed a check drawn on the prosecutrix's account for fifty dollars. Although this employee was unable to remember who had cashed the check, the witness did identify the check as the one cashed by her.

The signature on the check purported to be the prosecutrix's. The prosecutrix, however, testified that she had not signed the check. The check was endorsed in the name of the appellant.

A handwriting expert for the Houston Police Department testified that he compared samples of handwriting taken from the appellant with the endorsement on the check. The officer found that both the endorsement and the handwriting samples had been made by the same person.

The appellant took the stand in his own behalf. He testified that he first saw the prosecutrix at the convenience store and she asked him for a ride downtown. He stated that when he replied that he had no car the prosecutrix then asked him to come to her house. He went to her house and while there, according to his testimony, engaged in a consensual act of intercourse.

Appellant further testified that the prosecutrix gave him the television set and a blank check and invited him to come back some other time. Appellant specifically denied threatening the prosecutrix or even possessing a knife on the day in question.

The appellant admitted to cashing the check at the supermarket, and that he signed both his name and the prosecutrix's name on the check. He maintained that the prosecutrix had given him the check as he left her house and had not signed it because she had no pen. On cross-examination, the appellant admitted that he knew the check was forged.

The appellant's employer testified to his good reputation for truth and veracity.

■ Each of appellant's seven grounds of error is in effect a challenge to the sufficiency of the evidence. The record reveals another issue, however, which requires consideration in the interest of justice. Art. 40.09, Sec. 13, V.A.C.C.P. We must determine whether the convictions for aggravated rape and aggravated robbery of a single victim arising out of the same facts and occurring in the same transaction are in violation of the double jeopardy clauses of the state and federal constitutions.[1]

In *Tatum v. State*, 534 S.W.2d 678, this Court was faced with a situation almost identical with the present one. The defendant had pled guilty to the offenses of aggravated sexual abuse, aggravated rape, and aggravated robbery. The record in *Tatum* revealed that all three offenses were committed against the same person in the same transaction. The Court held that the

1. See *Duckett v. State*, Tex.Cr.App., 454 S.W.2d 755.

convictions for all three offenses violated the double jeopardy clauses of both the state and federal constitutions, and reversed two of the three convictions.

In *Hawkins v. State*, 535 S.W.2d 359, this Court reviewed numerous cases concerning double jeopardy and carving. The Court found that double jeopardy attached when multiple offenses had arisen from "an uninterrupted and continuous sequence of events or assaultive acts directed toward a single victim." 535 S.W.2d at 362. *See, Uribe v. State*, Tex.Cr.App., 573 S.W.2d 819.

In the present case, the initial display of the knife, coupled with the appellant's continued possession of the knife, must provide the aggravating circumstances in both the rape and the robbery. The appellant's initial assault with the knife continued throughout the episode. His acts were an uninterrupted and continuous assaultive act against a single victim. Conviction for both the rape and the robbery is violative of the double jeopardy clauses of both the state and federal constitutions.

■ Appellant was indicted in Cause No. 245,097 for the aggravated rape (Our Cause No. 56,876). The indictment for aggravated robbery shows it is Cause No. 245,179 (Our Cause No. 56,877). The record does not reflect which judgment was entered first, therefore we will apply the rule in *Ex parte Calderon*, Tex.Cr.App., 508 S.W.2d 360. We assume that the judgment in the lowest cause number was entered first. Thus, appellant's subsequent conviction in Cause No. 245,179 for aggravated robbery is reversed.

■ Appellant contends that the evidence was insufficient to support his conviction for aggravated rape. He maintains that the evidence was insufficient to prove the aggravating circumstances and to show a lack of consent by the prosecutrix.

In *Rogers v. State*, 575 S.W.2d 555, this Court was faced with a challenge to the sufficiency of the evidence to support a finding of aggravating circumstances in a rape case. This Court observed that when a gun or knife was used to compel submission the evidence is sufficient to prove the ag-

gravating circumstances under Sec. 21.03, supra.

In the present case, the prosecutrix testified that the appellant displayed a knife to gain entry after her initial refusal. Even after this weapon was out of sight, the threat of its use continued. We find the evidence sufficient to support the finding of a threat of death or serious bodily injury.

Further, the prosecutrix's testimony is sufficient to support a finding that the sexual intercourse was without her consent and that she submitted because of force and threats. *Twomey v. State*, Tex.Cr.App., 520 S.W.2d 784.

■ Finally, appellant contends that the evidence was insufficient to support the forgery conviction. Appellant maintains that, although the prosecutrix testified that she did not sign the check, there is no evidence that she did not authorize the appellant to sign the check.

The appellant is correct in his assertion that the prosecutrix never testified that she did not authorize someone else to sign the check. She did testify, however, that the checkbook was taken without her permission and that she did not sign the check. This testimony, coupled with the appellant's admission that he signed the prosecutrix's name to the check and knew it was forged, is sufficient to support a finding that the prosecutrix did not authorize the signature on the check. *See* and *cf. Payne v. State*, Tex.Cr.App., 567 S.W.2d 4; *Reed v. State*, Tex.Cr.App., 533 S.W.2d 35.

We hold that the evidence was sufficient to support the convictions for aggravated rape and forgery.

The judgment in Cause No. 245,179 (aggravated robbery) is reversed and the prosecution ordered dismissed. The judgments in Cause No. 245,097 (aggravated rape) and Cause No. 245,187 (forgery) are affirmed.

Before the court En Banc.

## MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

The majority overrules the State's motion for rehearing without opinion.

One should not be permitted to exhibit a weapon to another and commit several offenses against that person and be liable for punishment for only one offense.

Appellant Orosco was convicted of forgery, aggravated rape, and aggravated robbery. On original submission the convictions for rape and forgery were affirmed. The conviction for robbery was reversed and the prosecution ordered dismissed on the ground that the double jeopardy clause of the Constitutions of the United States and Texas had been violated because there was one assault against a single victim in the commission of the robbery and rape. We should be consistent in the cases and apply a test that would bring about forseeable and just results. The holding of a weapon on a victim should not allow wholesale crimes committed on that victim without being subject to more than one punishment.

The evidence showed that Orosco went to the door of the victim's home and demanded admittance. When the victim refused, the appellant pulled out a knife and again demanded entry. When the victim relented, he put away the knife and it was never seen again.

Orosco then took the victim upstairs and raped her. After the intercourse, both put on their clothes. Appellant took the victim to another bedroom and asked if she had any money. When she replied that she did not, he took her downstairs and stated that he was going to take something. He looked around the living room and unplugged the television. He then rummaged through the victim's purse and found her checkbook. The victim was ordered upstairs whereupon appellant left with the television set and the checkbook.

The majority opinion holds that carving applies to the crimes of rape and robbery because the evidence showed an "uninterrupted and continuous sequence of events or assaultive acts directed toward a single victim." This principle has been termed by commentators as the "same transaction" test. See Comment, *Twice In Jeopardy*, 75 Yale L.J. 262 (1969). Yet an analysis of the evidence in this case shows that the assault was neither continuous nor uninterrupted. The prosecutrix testified that the whole event lasted approximately one hour. During that hour several different crimes took place. Appellant had intercourse twice with the victim and attempted anal intercourse once. Further, he went through several rooms of the house before deciding to take the television set and the checkbook.

The majority opinion is based on the display of the knife and appellant's continued possession of it during the robbery and the rape. In other words, the same evidence would be required to prove a material element of each offense, namely, aggravation. This is, in effect, the "common elements" or "same evidence" test. See 75 Yale L.J. 262, supra.

Carving is a court made rule separate from and in addition to the constitutional provision that "No person for the same offense shall be twice put in jeopardy of life or liberty." Texas Constitution, Article 1, Section 14; Article 1.10, V.A.C.C.P. Basically, the rule is that the State is allowed to "carve" out of any one criminal transaction as large an offense as it desires but it can "cut" only once. The State is then bound by its election. *Herera v. State*, 35 Tex. Cr.R. 607, 34 S.W. 943 (1896). The difficulty with the application of the carving doctrine lies in the determination of what distinct offenses occur within the same criminal transaction.

The confusion concerning the meaning of "same criminal transaction" has accompanied the carving rule almost from the inception of Texas criminal jurisprudence. In *Herera v. State, supra*, certain principles were set forth to determine when the doctrine of carving applied. Indictments were *not* for the same offense if (1) the indictments were so diverse as to preclude the use of the same evidence to maintain all the indictments, or (2) each indictment set out an offense completely different in its elements from the others. If there was a common material element or if the same evidence was required to convict under each indictment, the carving doctrine applied.

In 1896, the court found the carving doctrine to be "inherently difficult, and made more so by contradictory and confused decisions from many of the courts."

Within nine years, confusion surrounded the doctrine of carving in this Court. In *Paschal v. State*, 49 Tex.Cr.R. 111, 90 S.W. 878 (1905), the court adopted a different test, but cited *Herera, supra*. Paschal assaulted his wife by (1) throwing an orange at her, (2) by choking her, (3) by cutting her clothes off, and (4) by brandishing a large stick to beat her. He was convicted first of aggravated assault and then of assault with intent to murder. The Court reversed the second conviction, holding that all these acts were "one and the same continuous act or transaction." Once the State had elected to prosecute for aggravated assault, it was bound by that election and could not prosecute for assault with intent to murder. No one could logically argue with the result of that case.

The confusion between the common element or same evidence test and the continuous assaultive transaction test continues to plague this Court. The common elements test was applied in *Price v. State*, 475 S.W.2d 742 (Tex.Cr.App. 1972), where the defendant forced his way into the victim's car with a knife and made her drive off. She pulled over a short time later where the defendant attempted to take a ring off her finger. The whole sequence of events, taking place over a ten to twelve minute period, was called a single transaction because the same evidence was used to convict the defendant of two separate offenses. The carving doctrine was applied and the defendant's last conviction was reversed. The case, by this writer, should be overruled even though it followed earlier cases.

In the very next year, the continuous assaultive transaction test was used in *Douthit v. State*, 482 S.W.2d 155 (Tex.Cr.App. 1972). Here the defendant forced the prosecutrix into his car and attempted to rape her in Travis County. They then drove to Hays County where he raped her twice, drove to Williamson County where she was raped again, and returned to Travis

County where she was released. The defendant was acquitted in Williamson County of rape, tried later in Travis County of assault with intent to rape and convicted. He argued on appeal that the entire episode was one continuous assaultive transaction and that the carving doctrine prohibited a second trial in Travis County. The Court held that the continuous assaultive action was one in which several assaultive transactions and completed crimes occurred. In other words, the several acts of intercourse were accomplished by one continuous act of force and threats to overcome the victim's resistance. The various acts of intercourse were sufficiently separated by time and place so that they were not part of a single transaction for carving purposes.

In *Duckett v. State*, 454 S.W.2d 755 (Tex. Cr.App. 1970), the defendant was convicted, first, of assault with intent to murder with malice and then of robbery by assault with a firearm. The Court cited *Paschal* for the continuous assaultive transaction test and then *Herera* for the common elements test. The Court then held that because the same evidence was used to support both convictions, carving was required. The robbery conviction was reversed.

The next series of cases all used the same evidence test. In *Crabb v. State*, 503 S.W.2d 260 (Tex.Cr.App. 1974), the defendant was convicted for speeding and willfully attempting to elude a police officer. In *Lee v. State*, 505 S.W.2d 816 (Tex.Cr.App. 1974), the defendant was convicted on each of three separate acts of sodomy. In each case, the court held that each offense was separate and distinct and not proven by the same evidence. See also *Muncy v. State*, 505 S.W.2d 925 (Tex.Cr.App. 1974), where the convictions were for attempting to elude a police officer and aggravated assault with a motor vehicle. In *Grant v. State*, 505 S.W.2d 279 (Tex.Cr.App. 1974), the convictions were for speeding and driving while intoxicated. In *Gehrke v. State*, 507 S.W.2d 550 (Tex.Cr.App. 1974), the convictions were for driving while intoxicated and failure to keep the vehicle in the same lane. This Court in these three cases held that the doctrine of carving did not apply.

In *Ex parte Evans*, 530 S.W.2d 589 (Tex. Cr.App. 1975), and in *Robinson v. State*, 530 S.W.2d 592 (Tex.Cr.App. 1975), both handed down on the same day, different tests were used in applying the carving doctrine. In *Evans*, the defendant was convicted of robbery and felony theft. The evidence showed that he brandished a pistol, took the victim's wallet, shot the victim in the stomach, forced the victim to run away, and then stole the victim's car. The robbery conviction was based on the stolen wallet while the stolen car formed the basis of the felony theft conviction. The Court stated that there was a continuous time sequence of events which "did not break the chain of antecedent violence perpetrated upon the complaining witness so as to give rise to the inception of another separate and distinct offense." [1]

In *Robinson v. State*, supra, however, the "common elements test" was used. Robinson was convicted of criminal trespass and misdemeanor theft when he entered the grounds of the University of Houston without authority and stole a bicycle. The Court reasoned that the trespass was committed as soon as the defendant entered the university grounds. The theft was subsequent to the trespass and, therefore, presumably did not require the same evidence for conviction. If that case had been analyzed under the "same transaction" test, carving would have been applied.

In *Hawkins v. State*, 535 S.W.2d 359 (Tex.Cr.App. 1976), the various carving tests were intermingled. Hawkins was convicted, first, of carrying a prohibited weapon, a sawed-off shotgun and, then, of aggravated robbery with a deadly weapon. The defendant used the sawed-off shotgun in the robbery. The Court cited cases using each of the carving tests and found "a common thread" in all those decisions. "The common factor has been an uninterrupted and continuous sequence of events and assaultive acts directed toward a single victim." The Court held that the two instant charges were separate and distinct

offenses in law and in fact, citing *Robinson v. State*, supra. The Court ignored the reasoning that the possession of the shotgun was with the intent of committing the robbery and that the possession occurred during the same criminal transaction as the robbery. There was also a common element in both crimes.

In *Humphreys v. State*, 565 S.W.2d 59 (Tex.Cr.App. 1978), the defendant was convicted of resisting arrest and failure to identify himself as a witness. The Court cited *Ex parte Joseph*, 558 S.W.2d 891 (Tex. Cr.App. 1977), and stated that a defendant could not be convicted of different parts of a single transaction, though technically those parts were legally distinct offenses thus ignoring the holdings of *Hawkins* and *Robinson*. The Court then stated that carving would apply only when the first offense was a necessary and essential element of the second, thus ignoring the holding of *Herera*, which requires only a common material element. The Court then held that carving was not required because (1) the evidence required to convict on each offense was not the same, and (2) the acts which constituted the basis of the defendant's arrest for failure to identify himself were complete prior to the acts constituting resisting arrest. This holding is the essence of the *Hawkins* and *Robinson* rationale of legally distinct and separate offenses.

The Court returned to the "same transaction" test in cases where the defendant was convicted of robbery by assault and murder with malice, as in *Ex parte Barron*, 568 S.W.2d 362 (Tex.Cr.App. 1978), and in *Ex parte Williams*, 571 S.W.2d 27 (Tex.Cr.App. 1978), and in a case involving robbery and assault with intent to commit murder with malice, as in *Ex parte Cantell*, 571 S.W.2d 33 (Tex.Cr.App. 1978). The Court stated that the convictions were the result of a continuous and uninterrupted assaultive transaction directed at a single victim in the same place at the same time. It should be noted that in *Barron* the robbery was noted as a lesser included offense of the

---

1. See and compare *Ex parte Jewel*, 535 S.W.2d 362 (Tex.Cr.App. 1976), where, in a very similar fact situation, the common elements test was used to hold that carving applied.

other charge. See also *Wilson v. State*, 577 S.W.2d 498 (Tex.Cr.App. 1979).

This Court in *Ex parte Fitch*, 580 S.W.2d 372 (Tex.Cr.App. 1979), held that the offenses of robbery and escape from jail were separate offenses where the petitioner, using a rifle, robbed the sheriff of over two hundred dollars, locked him in his own jail and escaped. The Court reasoned that the assault was not a necessary element of the offense of escaping from jail.

The dissenting opinion in that case noted the two theories of same transaction and common element. It stated that the evidence showed that the sheriff was both the party assaulted with the gun in the robbery and the person against whom the firearm was used in the escape, with all elements of each offense occurring simultaneously. Further, the element of assault was a material element in each offense.

A comparison of the holdings noted above demonstrates the frustration any analysis of the carving doctrine yields. The Court has been operating on at least two theories of determining when two indictments are for the same offense, the same transaction test and the common elements test. Arguably, there is even a third test, the "same evidence" test. Because this Court uses the several tests, the precedential value of any one case is of little or no consequence.

Other jurisdictions have found the standard analytical tools unworkable. One commentator described the same evidence test as a "stereotypical formula" that leads not only to unpredictable results but erodes the finality of criminal judgments as well. Kirchheimer, *The Act, The Offense and Double Jeopardy*, 58 Yale L.J. 513 (1949).

Justice Dimond of the Alaska Supreme Court criticized the same evidence test because it increases the likelihood of multiple punishment for what is "really and basically one criminal act." He criticized the same transaction test because there is no useful standard to determine just what is a single criminal transaction. *Whitton v. State*, 479

P.2d 302 (Alaska 1970). Pennsylvania adopted a modified version of the same transaction test in order to (1) avoid piecemeal litigation and conserve judicial manpower, (2) provide the defendant with a speedy trial, and (3) prevent prosecutorial harassment. *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973).

Various theories have been proposed as alternatives to the standard analytical modes. In *Whitton v. State*, supra, the Alaska Supreme Court stated that, when confronted with a carving problem, the trial judge must compare the statutes involved by applying them to the facts of the case in order to determine whether there are significant or substantial differences in the defendant's intent or conduct. He must then analyze any differences in the light of society's interest, including the nature of the property or personal right to be protected and the broad objects of criminal law. Ultimately, the judge must determine whether the differences are substantial enough to justify imposing multiple punishments or permitting multiple prosecutions. In *Whitton*, the defendant was charged with robbery and committing a robbery by use of a firearm,[2] both occurring during the same criminal action. The Alaska court had no trouble finding that both crimes were committed with the same intent and the same conduct and, therefore, the state could prosecute only once.

That the analysis is a two-stage process was emphasized in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973). The defendant was convicted of fourteen counts of manslaughter and one of arson where the proof showed that he had only the intent to commit arson. The defendant had no knowledge of anyone being in the building at the time he set the blaze. The court found no significant differences in intent or conduct to justify the imposition of multiple punishment. Therefore, it was unnecessary to examine the social interests to be vindicated.

---

2. Though it is clear that the Texas carving doctrine would apply with this particular in-

dictment, the facts of the case are closely analogous to *Hawkins v. State*, supra.

In *Walton v. State*, 448 S.W.2d 690 (Tenn. Cr.App. 1969), the defendant was convicted of burglary with intent to rape and assault with intent to rape. The court stated that multiple prosecutions were barred where the various offenses grew out of the same transaction involving the same criminal intent. The same rationale was used by the Tennessee Supreme Court in *Acres v. State*, 484 S.W.2d 534 (Tenn. 1972), where the defendant commandeered an automobile at gunpoint, killed the driver and stole his money.[3] See also *Carr v. State*, 2 Tenn.Cr. App. 568, 455 S.W.2d 619 (1970), which is factually similar to *Hawkins*. In *Rockett v. State*, 475 S.W.2d 561 (Tenn.Cr.App. 1972), the defendant was convicted of robbery and rape. He held a pistol to the victim's head, made her lie down, emptied her purse and raped her. The court held these were separate offenses with separate intent and each could be prosecuted. This case is very similar to the case at bar.

The Michigan courts have also broadened their "same transaction" test. The crimes must be committed in a *continuous time sequence* and display a *single intent and goal*. If a defendant has only one objective and commits several crimes in attaining that objective, only one prosecution may be brought. There must be a close unified purpose, an essentially unitary criminal act. Mere temporal proximity is insufficient. In *People v. Robertson*, 67 Mich.App. 603, 242 N.W.2d 24 (Mich.Ct.App.1976), the defendant was convicted of possessing both marihuana and receiving stolen property. Though the police developed the evidence of both crimes at the same time, satisfying the time sequence test, the court found that each crime was committed with a different criminal intent. Double jeopardy was not applicable.

This Court should adopt the "intent" test just as the Alaska Court did in the *Whitton* case. The trial court should compare the statutes involved by applying them to the facts of the case in order to determine whether there are significant or substantial differences in a defendant's intent or conduct.

No rule can be established that will apply to all cases. The same transaction test is too broad. Each case must be determined on its particular facts.

In order to determine whether prosecution should be barred for multiple offenses arising out of the same transaction, the trial court should look to (1) the definition of the offenses and (2) whether the results were the result of a single or multiple acts. The act or acts and the intent for each act, the different injuries incurred by the victim, should be considered.

Such a test could not be applied mechanically, but it would be better than the confusion we now have from the many cases in this State.

There is no reason to hold that a man can hold a weapon on another person and commit as many crimes against that victim as he wishes without fear of punishment except for one crime. Such holdings do not deter crimes but encourage them.

The appellant's motion for rehearing should be overruled and both judgments for robbery should be affirmed.

W. C. DAVIS, J., joins in this dissent.

---

3. See and compare *Ex parte Evans*, supra, and *Ex parte Jewel*, supra.