Vernon Glenn BARTHOLOMEW,
Appellant,

v.

The STATE of Texas, State.

Nos. 2–83–344–CR to 2–83–346–CR.

Court of Appeals of Texas,
Fort Worth.

July 5, 1984.

Max Blankenship (on appeal), Fort Worth, for appellant.

Robert K. Gill, Asst. Criminal Dist. Atty., Fort Worth, for appellee.

Before HUGHES, JOE SPURLOCK, II and HILL, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This appeal is from a plea of guilty to a jury upon three separate felony indictments charging aggravated kidnapping, aggravated rape, and aggravated robbery, all arising out of a single criminal episode. The trial was on the issue of punishment, which the jury assessed at 35 years for aggravated kidnapping, 35 years for aggravated rape, and 25 years and a $500.00 fine for aggravated robbery.

We affirm.

The appellant, Vernon Glenn Bartholomew, through appellate counsel, raises a single ground of error that the trial court committed reversible error by its failure to withdraw his plea of guilty. He alleges evidence was presented which reasonably and fairly raised the issue of his innocence. He did not request a withdrawal of his plea, and objected to the court's offer to withdraw his plea.

In addition to this ground of error urged by Bartholomew's appellate counsel, we are asked to consider the following in appellant's pro se brief: Bartholomew asserts pro se that (1) the trial court erred in disallowing the psychiatrist's, Dr. Furber, professional recommendation concerning appellant, (2) the trial court erred by not permitting the testimony of witnesses for him, Janie Pitchford and her husband, concern-

ing a previous time she felt threatened with rape and appellant's help to prevent it; (3) the trial court erred in allowing a knife and stocking in as demonstrative evidence; (4) the trial court erred, in light of the alleged bias of the trial judge, in denying a requested change of venue; (5) an unclear ground of error regarding the age and races of the veniremen; (6) the trial court erred in allowing contradictory testimony of the prosecutrix, the victim; and (7) in failing to subpoena a detective.

We have carefully reviewed the record in the instant case in regard to each allegation raised by Bartholomew in his pro se brief and find each ground, one through seven, to be wholly without merit. We overrule grounds of error one through seven and direct our attention to the sole ground of error as raised by his appellate counsel.

At arraignment, Bartholomew pled guilty to one count in each of the three indictments. A jury was impaneled to hear the punishment phase of the case. The appellant entered his guilty plea to all three indictments in the presence of the jury. The jury was excused and the appellant was properly admonished concerning his guilty pleas as follows:

THE COURT: Mr. Bartholomew, you have pled guilty to three different Indictments. When I talk to you the next few minutes we are discussing each and every one of the Indictments.

In each case are you pleading guilty because you are guilty and for no other reason?

THE DEFENDANT: Yes, sir, that's right.

THE COURT: Has anybody threatened to harm you to force you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anybody promised you any hope of pardon or reward to convince you to plead guilty?

THE DEFENDANT: No, they haven't.

THE COURT: Are you pleading guilty out of any fear or persuasion?

THE DEFENDANT: No, I am not.

THE COURT: Is your pleas of guilty freely and voluntarily given in all means?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand upon your plea of guilty I must find you guilty and the jury may assess your punishment at not less that five nor more than ninety-nine years or life. In addition, they can fine you up to ten thousand dollars in each case.

THE DEFENDANT: Yes, sir.

THE COURT: Is your client competent to stand trial?

MR. PRICE: Yes, sir, he is.

THE COURT: Are we ready to proceed?

MR. PRICE: Yes.

THE COURT: I will accept the pleas as freely and voluntarily given by a competent Defendant.

Are we ready to proceed?

On appeal, Bartholomew argues contrary to his specific stance at trial. During the trial and immediately prior to the charge to the jury, the State suggested the court might change appellant's plea to not guilty. Bartholomew vigorously objected and insisted both personally and through counsel that he was guilty. He further insisted that he needed to persist in that plea, expecting that to be the only way to have the jury consider his plea for probation.

THE COURT: Mr. Bartholomew, during the course of this case certain exculpatory evidence has been introduced, and I previously have told you and asked you if you were pleading guilty out of fear or persuasion or anybody forced you to or anybody promised you anything; is that true?

THE DEFENDANT: No, sir, it's not.

THE COURT: I did not?

THE DEFENDANT: You informed me of that.

THE COURT: We are fixing to have the jury Charge and jury arguments. Have you discussed this case fully with your counsel?

THE DEFENDANT: Pretty much, yes, sir.

THE COURT: Are you satisfied with his advice and counsel concerning your plea?

THE DEFENDANT: I think, yes, sir, I am satisfied.

THE COURT: Even at this late date if you wish to withdraw your plea of guilty I will permit you to withdraw your plea before the jury and enter a plea of not guilty for you, and we will submit the case on the basis that you pled not guilty.

Do you want to do that?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied that you have voluntarily pled guilty in these cases?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

MR. PARRISH: Your Honor, the State at this time would request the Court considering enter pleas of not guilty on these three cases for the Defendant and submit it to the jury tomorrow.

MR. PRICE: Your Honor, we would oppose that because that would've changed our whole strategy if we had tried the case with an innocent plea.

THE COURT: I'll ask you, Mr. Price. Are you satisfied in your own mind this is the proper strategy to take in this case?

MR. PRICE: Yes, sir.

THE COURT: You have so advised your client?

MR. PRICE: Yes, sir.

THE COURT: He has agreed to that strategy?

MR. PRICE: Yes, sir.

THE COURT: As his hired counsel that's the strategy you and his family wish to proceed on?

MR. PRICE: Yes, sir.

THE COURT: Do you think there is any legal impediment to his plea of guilty?

MR. PRICE: No, sir.

THE COURT: All right. It will be charged as a plea of guilty.

MR. PARRISH: We would like one request of you to ask Defense counsel. I believe the law of parties was misstated by the Defendant when he was on the stand. Would you see if he, through counsel, fully understands the law of parties?

MR. PRICE: We would like to have the law of parties as an instruction in the Charge, Your Honor.

THE DEFENDANT: Your Honor, I don't know the law. I am just taking advice of my lawyer.

THE COURT: Well, come up here, Mr. Price. I think I've gone over it with you. The things that we have discussed concerning the law of parties, the law of intent to commit one felony and another resulting. Have you discussed all these things with your client?

MR. PRICE: I believe so.

THE COURT: Are you satisfied that his plea of guilty is freely and voluntarily given?

THE PRICE: Yes, sir.

THE COURT: All right.

Upon reflection and upon appeal, Bartholomew now urges to the contrary that the evidence reasonably and fairly raises the question of his innocence and was contrary to his plea of guilty to all three indictments. We disagree.

The evidence of his guilt consisted of his testimony and the testimony of the investigating officer, the prosecutrix, and the person to whom the prosecutrix fled for assistance. The prosecutrix positively identified Bartholomew in open court. Bartholomew, through his testimony, offered the jury a view of the kidnapping, rape, and robbery which differed from the prosecutrix.

The undisputed testimony of Bartholomew was that on April 3, 1983, he and another man planned to rob somebody. While in Bartholomew's automobile, they had staked out a convenience store late at night. They followed the prosecutrix from the store as she drove a few blocks to her apartment. As she was getting out of her car, he approached her wearing a stocking mask over his face. He brandished a knife, and the prosecutrix testified he insisted that she "Scoot over bitch. Get your keys

and hurry up, and if you don't I will have to hurt you, and don't do anything stupid, you c_____."

Bartholomew got into her automobile and drove some 30 minutes to a house in Blue Mound, Texas. The other man followed them closely, driving Bartholomew's car. Upon arriving at the house, Bartholomew and the other man marched the prosecutrix into the darkened home, forcing her into a bedroom and began removing her clothes. The prosecutrix testified that for fear of her life, she did not resist. Bartholomew had sexual intercourse with the prosecutrix and left the room. The other man sodomized and had intercourse with the prosecutrix. Upon completion of these acts, the prosecutrix was permitted to get dressed and was taken outside.

During Bartholomew's inattention outside, the prosecutrix started her car and fled from the scene. Her escape was temporarily hindered by the other man slashing the tires of her car as she sped away. She drove to a home nearby and, by pounding on the door, gained entrance to the household. The resident noted the hysterical and disheveled condition of the prosecutrix and summoned the police. This witness further testified that the prosecutrix's state of hysteria was such that she was even afraid to accompany the police for fear that they were somehow connected with the kidnapping. With some coercion, she did accompany them. The prosecutrix testified that the following morning, she discovered that $200.00 her father had given her shortly before this incident was missing from her purse.

The defense put on numerous witnesses to attest to Bartholomew's reputation as a peaceful and law-abiding citizen. In addition, the defense presented the testimony of a psychiatrist and psychologist, both of whom categorized the appellant as unstable and sociopathic. These professional witnesses further testified as to Bartholomew's competence to stand trial and the likelihood he would be successfully treated through intense probationary programs which incorporate both psychological and drug treatment.

Bartholomew testified that on the date in question, he did not have the intention of abducting anyone or of having sexual relations with anyone and that his only intention was to rob somebody. He admitted most of the facts related above. One difference concerned his intent at the onset of his act. He testified that except for the use of the knife and mask, he did not harm the prosecutrix and in fact spent the 30-minute drive in conversation while he tried to seduce her. He first realized how his intentions could be mistaken while he was having intercourse with her in the darkened bedroom. He felt that his conduct with this unknown woman (whom he intended to rob), having been taken at knife point, brought to the darkened house by two men, who were both having intercourse with her, could be viewed as "wrong". The prosecutrix testified that although the two were conversing during the ride, she was trying to get him to treat her as a person, not a victim. She testified that for the last part of the ride, he shoved her face down to the console of the automobile. He denied this. Bartholomew testified that he merely sought to seduce the prosecutrix and take her money. His other testimony correlated with that of the prosecutrix except Bartholomew denied cursing her, or removing her clothes. On cross-examination, the following exchange took place:

Q. [The Prosecutor] All right. You are charged here with three cases. Do you realize that?

A. Yes, sir.

Q. And the cases are aggravated kidnapping, aggravated rape and aggravated robbery; is that right?

A. That's right.

Q. And earlier Assistant District Attorney Wisch stood here and read three paragraphs out of three Indictments to you, read the Indictments to you, and the Judge asked you, "How do you plead; guilty or not guilty." Do you remember that?

A. Yes, sir.

Q. At the start of the trial when the jury was right here and you pled guilty to each case.

A. Upon my counsel suggesting that, yes, sir.

Q. Are you guilty in each case?

A. According to the law, yes, sir.

Q. Is it your testimony then that you, Vernon Glenn Bartholomew, in Tarrant County, Texas, on or about the 4th day of April, 1983, did intentionally abduct [her] by using and threatening to use deadly force on [her], and with the intent to prevent the liberation of [her] and with the intent to abuse her sexually? Are you guilty of that?

A. If getting into the car with a knife is threatening to use deadly force then, yes, I am guilty.

Q. Let me try it this way, Mr. Bartholomew. Are you not guilty of any of the things I have just read?

A. I pled guilty to all of them.

Q. So, all of the allegations contained in there are true?

A. According to the law of parties I am guilty on all three counts.

Q. Let's talk about the law of parties just a minute. Let's take care of the evidence first.

Let me show you what is in evidence as State's Exhibit No. 1. That is your house; is that correct?

A. Yes, sir, it is.

Q. That's where you were living?

A. That's my house.

Q. That's where you raped [her]?

A. That's where I had sex with her.

Q. You didn't rape her?

MR. PRICE: Your Honor, he is calling for a legal conclusion. The Defendant has already answered the question.

THE COURT: Sustained.

Q. (By Mr. Parrish) You merely had sex with [her]; is that right?

A. (By the Witness) That's correct.

Q. Sexual intercourse?

A. That's correct.

Q. Against her will?

A. She didn't appear that way then to me.

. . . .

Q. Just going to go out and rob and steal?

A. Rob or steal.

Q. So, all of the allegations contained in Count 1 of this Indictment are true and correct and you are guilty of each and every one of those; is that true?

A. I didn't threaten to use force. On this, as I stated, where getting into a car with a weapon would be threatening. So, if that's the way it is then you are right. That's absolutely true. I, by myself, perpetrated the aggravated kidnapping.

Q. Do you consider it threatening if somebody walks up to you with a knife and says, "Scoot over"?

A. I would consider it very intimidating, threatening.

Q. You have previously testified the knife you used was capable of causing serious bodily injury or death?

A. Yes, sir, it was.

. . . .

Q. So you are telling this jury that a woman that you approached at midnight in a dark parking lot with a stocking over your face and a knife in your hand, who, when you first saw her, screamed, and you commandeered her keys, take her within her car, and within a couple of minutes you are thinking of seducing her and she is not upset; is that what you are telling the jury?

A. She didn't appear to me to be that upset. But, basically, that's what I am telling the jury.

. . . .

Q. Okay. Vernon, let me ask you some questions. You've been answering questions about whether you are guilty of this or that. You are pleading guilty to the Indictment; is that correct?

A. Yes, sir, I am pleading guilty.

Q. Okay. Let's talk about the aggravated kidnapping.

You told the jury that you are guilty of that?

A. Yes, sir I have.

Q. Okay. Now, what is kidnapping to you?

A. It's taking one body from one place to another against their will.

Q. Okay. What is aggravated kidnapping to you?

A. That would be doing so with the intent to commit another felony.

Q. Okay. Now, was it your intent to abuse her sexually when you kidnapped her?

A. No, sir, as I stated, it was not.

Q. Okay. So even though you are pleading guilty you are saying that was not your intent?

A. No, sir, that wasn't my intent.
. . . .

Q. Okay. On these other Indictments is your position the same that technically you are guilty of them for those reasons but your actions may be different?

A. I wasn't the one that actually perpetrated them, but I was there.

Q. Okay. Well, you were involved to some extent in each one of those?

A. Oh, yes, sir, I was.

Q. And you are not telling the jury now that you are changing your plea and that you are saying you are not guilty, are you?

A. I can't do that, no. I am guilty.

Bartholomew asserts that his denial by his testimony of his commission of certain essential elements of the three charged offenses, directly contrary to the testimony of the prosecutrix, reasonably and fairly raised the issue of his innocence as to all three criminal charges. We disagree.

A plea of "guilty" made to a jury is governed by TEX.CODE CRIM.PROC. ANN. art. 26.14 (Vernon 1966), as amended and provides the following:

Where a defendant in a case of felony persists in pleading guilty or in entering a plea of nolo contendere, if the punishment is not absolutely fixed by law, a jury shall be impaneled to assess the punishment and evidence may be heard to enable them to decide thereupon, unless the defendant in accordance with

Articles 1.13 or 37.07 shall have waived his right to trial by jury.

■ Where the accused pleads guilty to a jury, as in the instant case, the plea admits the existence of all facts necessary to establish guilt. The introduction of testimony by the State is used to enable the jury to intelligently exercise their discretion regarding the range of punishment. *Darden v. State*, 430 S.W.2d 494, 495 (Tex. Crim.App.1968); *Turnipseed and Howard v. State*, 609 S.W.2d 798, 801 (Tex.Crim. App.1980). In the case on appeal, Bartholomew testified in support of his guilty pleas as follows:

Q. [Def. Counsel] For the jury's benefit would you describe your feelings after this incident towards [her]?

A. My feelings toward her?

Q. Yes, or about her.

A. I don't understand. I knew that the woman had been done wrong. There wasn't much I could do about it. I was ashamed of what I did, but I had already done it, just like right now.

Q. Okay. Did you feel any animosity towards her in any way?

A. I had no reason to have any animosity towards her. She did nothing to me. I was the one that did her wrong. She had done nothing to me.

The general rule is that "where a plea of guilty is entered in a felony case, before a jury, and evidence is introduced which makes evident the innocence of the accused, or which reasonably and fairly raises an issue as to such fact, such evidence should be withdrawn or a plea of not guilty entered." *Burks v. State*, 145 Tex.Cr.R. 15, 165 S.W.2d 460, 463. Some cases in which this rule has been used are: *Taylor v. State*, 555 S.W.2d 483 (Tex.Crim.App. 1977); *Malone v. State*, 548 S.W.2d 908 (Tex.Crim.App.1977); *Woodberry v. State*, 547 S.W.2d 629 (Tex.Crim.App.1977); *Lewis v. State*, 529 S.W.2d 550 (Tex.Crim. App.1975). "For the rule to come into play, the evidence must go farther than just tending to show a defensive issue, it *must* [emphasis added] reasonably and fairly present such issue before the trial court is

required to withdraw the guilty or nolo contendre plea." *Varela v. State,* 553 S.W.2d 111, 112 (Tex.Crim.App.1977), citing *Reyna v. State,* 434 S.W.2d 362 (Tex.Crim. App.1968); *Galvan v. State,* 525 S.W.2d 24 (Tex.Crim.App.1975); *Davis v. State,* 507 S.W.2d 740 (Tex.Crim.App.1974); *Jones v. State,* 491 S.W.2d 883 (Tex.Crim.App.1973).

In support of Bartholomew's pleas of guilty, the evidence of his guilt by his own testimony was sufficient. He has not shown nor did he assert at trial a legal defense. From our careful review of the record, we fail to find testimony that makes evident his innocence. Instead, we are faced with an accused who admits that the acts and elements of the offenses charged took place. The only distinguishing factor in the rape case is that Bartholomew felt that because the prosecutrix failed to vigorously resist, he was unaware that he was violating her against her own free will. Bartholomew cites us to several cases where the court discussed whether the evidence reasonably and fairly raised an issue of fact as to the innocence of the accused. *See Sanchez v. State,* 543 S.W.2d 132 (Tex.Crim.App.1976); *Cooper v. State,* 537 S.W.2d 940 (Tex.Crim.App.1976); *Faz v. State,* 510 S.W.2d 922 (Tex.Crim.App. 1974). Each of these cases involves a plea of guilty or nolo contendre made to the trial court, not a jury, and in them some real question of fact necessary to support the verdict was raised. They are not applicable in the instant case. Bartholomew argues that he was confused as to the law of the parties and that his pleas of guilty were based on the advice of his counsel. The testimony excerpted in this opinion shows that the trial court went to great lengths to determine the motivation for entering the pleas of guilty and inquired as to Bartholomew's understanding of his counsel's advice. The court gave appellant's requested charge on the law of parties in support of his pleas of guilty.

The law provides that an accused must have the requisite culpable mental state necessary to sustain a conviction. A person is culpable and acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. sec. 6.03(a) (Vernon 1974). "Intent can be inferred from the acts, words, and conduct of the accused." *Beltran v. State,* 593 S.W.2d 688, 689 (Tex.Crim.App.1980); *Romo v. State,* 593 S.W.2d 690, 693 (Tex.Crim.App. 1980).

█ The aggravated kidnapping indictment that Bartholomew pled guilty to charged him with intentionally abducting the victim and intending to prevent her liberation. He testified that he intentionally had oral and sexual intercourse with the prosecutrix after he had brandished a knife at her to gain access to her car and after driving off with her in her car, thus committing kidnapping. We are of the opinion that this testimony is sufficient to sustain the plea of guilty to aggravated kidnapping. It is evident from Bartholomew's testimony that his acts were intended. We find no evidence that reasonably and fairly raises the issue of his innocence.

█ Bartholomew testified that "I started realizing the circumstances of how she got at my house; that it was in essence kidnapping; that if she were to go to the police, if they've got a kidnapping and you have sex that's going to be rape." He then quit his act of rape and left the room. This testimony indicates he was aware that he was committing criminal acts and that he had intended to commit them. The fact that it suddenly occurred to him that he was in trouble and then he stopped his act of raping his victim is not enough to reasonably and fairly raise the issue of his innocence. The fact that he exhibited a knife in such a way that it was a deadly weapon at the point of abduction and that the prosecutrix testified she was aware of the knife during the act of sexual intercourse is enough to constitute aggravated rape. In *Rogers v. State,* 575 S.W.2d 555, 559 (Tex.Crim.App.1979), the court asserted that when there was a showing that "a gun or knife was used, or a threat to kill the victim was made, or serious bodily injury was inflicted or a combination of two or more of these factors," then the evidence would be sufficient to support a conviction for aggravated rape. TEX.PENAL CODE

ANN. sec. 21.03 (Vernon 1981). In *Orosco v. State*, 590 S.W.2d 121, 124 (Tex.Crim. App.1979), where the facts resemble the instant case, the court held that even after this weapon was out of sight, the threat of its use continues. We find the evidence sufficient to sustain the conviction of aggravated rape and further find that no evidence reasonably and fairly raised the issue of Bartholomew's innocence.

On the issue of aggravated robbery, we find that the testimony of Bartholomew that he and his companion intended to rob someone; that he used a knife to abduct his victim; that although unemployed for some time, he had $78.25 in his possession at the time of his arrest; that he and his companion stayed at a motel after the robbery at a room rate of $35.00–$50.00 a day; that the prosecutrix had $200.00 taken from her billfold sometime during the events; and that his companion had told him he had taken $100.00 from her billfold, when considered together, support the finding of guilt. The evidence does not reasonably and fairly raise the issue of Bartholomew's innocence of aggravated robbery. We hold that the trial court did not err in failing to sua sponte enter a plea of not guilty before the jury was charged. We find there was sufficient evidence to support all the pleas of guilty.

The judgments are affirmed.