CITIZENS BANK, Bentonville, Arkansas; Now First
National Bank, Bentonville, Arkansas *v.* Paul CHITTY

84-223                                                 684 S.W.2d 814

Supreme Court of Arkansas
Opinion delivered February 25, 1985

56

*Ralph E. Williams* and *Mark W. Corley,* for appellant.

*Croxton & Boyer,* for appellee.

JOHN I. PURTLE, Justice. A Benton County Circuit Court jury awarded appellee the sum of $8,000 on his complaint against the appellant for $9,000. On motion of appellant the trial court reduced the judgment by the amount appellee had collected from the drawer of the bad checks, Arthur L. Wagner, of Springfield, Missouri. Appellant appeals from the jury verdict on the ground that the trial court gave an erroneous instruction. The appellee cross appeals from the action of the trial court in reducing the judgment. We hold that the instruction was not prejudicial and that the court erred in reducing the jury verdict.

Arthur L. Wagner wrote appellee, Paul Chitty, three checks in 1981. All three were dishonored, the first two for insufficient funds and the third because the account was closed. The sequence of events is important in understanding the facts. The first check, in the amount of $4,750, was written on August 18, 1981, and deposited in appellee's account in the appellant bank on August 25, 1981. The second check, in the amount of $4,500, was dated September

9, 1981. The first check was returned to the appellant bank on September 10, 1981, because of insufficient funds. The first check was sent back through banking channels for collection on September 11, 1981. On this same day Wagner wrote appellee a third check in the amount of $9,000. The second check was deposited by appellee in the appellant bank on September 14, 1981. The third check was deposited on September 16, 1981. On October 5, 1981, the appellant learned through its wire service that the second check was being returned for insufficient funds. The appellant also learned by wire service on September 24, 1981, that the drawer's account had been closed. The first two checks were charged back to appellee's account on October 7, 1981, and the third on October 15, 1981.

The appellee payee filed suit for damages against the appellant bank in the amount of $9,000 plus costs and pre-judgment interest. The complaint alleged negligence in breach of a fiduciary duty owed to the depositor (appellee). The bank filed a general denial and attempted to reserve the right to counterclaim or cross-claim. However, the answer was not amended before trial.

Prior to trial the appellee had expended over $2,000 in attempting to obtain satisfaction from the maker of the bad checks. Proof of collection costs was introduced at the trial. Upon a post-trial motion of appellant, the trial court amended the judgment to give the bank credit for the $5,703 which appellee had collected from the maker of the bad checks.

Both parties appeal. The bank contends it was prejudicial error to give appellee's instruction #8. The appellee contends that the court erred in giving the bank credit for the amount collected from the maker of the bad checks.

The instruction upon which the appellant relies for reversal reads as follows:

### RIGHT OF CHARGE-BACK OR REFUND
If a collecting bank has made a provisional settlement with its customer for a check and said check is

dishonored, the collecting bank may revoke the settlement given by it and charge back the amount of any credit given for the check to its customer's account or obtain a refund from its customer if, by its midnight deadline or within a longer, reasonable time after it learns the facts of the dishonored check, send notification of the facts to the customer. The right to revoke, charge back, or obtain a refund from the customer, terminates if and when a settlement for the check received by the bank is or becomes final.

The objection to the instruction was that it related to the bank's action in making charge backs to appellee's account and that the issue of charge back was not before the jury. In looking at the complaint it alleges a breach of a fiduciary duty in failing to notify appellee that the first check was returned for insufficient funds. Thus, appellee alleges, the bank's negligence in not notifying him resulted in damages in the amount stated in the complaint. Admittedly, there was no mention of an illegal charge back in the complaint. The challenged instruction did not inform the jury that the amount of the charge was to be considered in arriving at a verdict on damages. It did inform the jury that the bank could make a charge back if it acted by its midnight deadline or within a longer reasonable time, provided it notified the customer. Therefore, the court was simply instructing the jury on the bank's duties to its customer. The verdict was not in an amount of any or all of the checks which were charged back to the customer's account. The instruction was not contrary to appellee's theory of negligence.

Ark. Stat. Ann. § 85-4-103 (1) (Add. 1961) states that a bank may not disclaim its responsibility for "failure to exercise ordinary care or . . . limit the measure of damages for such lack or failure . . . " "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as approximate consequence." Ark. Stat. Ann. § 85-4-103 (5). Thus it may be seen that the amount of

recovery is limited to the amount of the item[s] in the absence of bad faith. Also, the damages are decreased by the amount which would not have been recovered had the bank exercised ordinary care.

According to the definitions set out in Ark. Stat. Ann. § 85-4-104 (1) (h), "midnight deadline" is midnight on the next banking day following the banking day on which the item is received. A bank must use ordinary care in sending notice of dishonor after learning that an item has not been paid or accepted and the burden is on the bank to establish the reasonableness of notice provided beyond its midnight deadline. Ark. Stat. Ann. § 85-4-202 (1) (b) and (2) (Add. 1961 and Supp. 1983). In *First National Bank of Springdale* v. *Hobbs*, 248 Ark. 76, 450 S.W.2d 298 (1970), this court affirmed a judgment against the bank which had paid checks on an unauthorized signature. Hobbs sued the bank for checks totaling $31,001.49 and obtained a judgment for $12,495.33. The judgment was upheld on the grounds that there was evidence upon which the jury could have found that the bank failed to use ordinary care. Likewise in the present case there was evidence before the jury from which it could find that the bank failed to use ordinary care in handling the three dishonored checks.

Rule 15 (b) of the Arkansas Rules of Civil Procedure states in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The complaint here specifically pled lack of ordinary care in the handling of the first check. The parties stipulated facts about the dates the three checks were written, deposited, returned and charged back to appellant's account. The first check was deposited to appellee's account on August 25, 1981, and the charge back occurred on October 7, 1981, the same date check number two was charged back, although it had been deposited on September 14, 1981. The third check was deposited on September 16, 1981, and charged back on October 15, 1981, although the bank received notice it had been dishonored by the paying bank on September 24, 1981. The jury had before it evidence and instruction relating to "midnight deadline," "reasonable

time," "charge back," and "ordinary care." It could have found that appellee was damaged in the amount of any item less an amount which would have been lost even if appellant has used ordinary care. The drawer of these three items was apparently still around and in business when at least two of the items were handled and possibly when the third was handled. Under the facts presented here the jury may have found the $8,000 was the amount of the item[s] less the amount which would have been lost even had the bank exercised ordinary care. The consequential damage instruction was requested by the appellee and not objected to by the appellant. The pleadings never identified damages as anything but "damages." The prayer was simply that appellee recover "the sum of $9,000, plus accured interest." We agree that under the facts presented the appellee was not entitled to consequential damages because there was not even an implication that the bank acted in bad faith.

Cross appellant argues the court erred in amending the judgment to give the bank credit for the amount appellee had collected from the bad check writer. We agree with this argument because the judgment was supported by the evidence and there had been no amendment to the general denial answer filed by the bank. Rule 13 (a) of the Arkansas Rules of Civil Procedure states in part: "A pleading shall state as a counterclaim any claim which, at the time of the filing of the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The subrogation claim by the bank arose out of the same transactions as the allegations of the complaint and there were no other parties necessary. Therefore, failure to assert the counterclaim prevented the court from reducing the judgment by the amount already collected by the appellee at the time of trial.

Affirmed on direct appeal and reversed on cross appeal.