**George Anthony RUBINO, Petitioner,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent.**

**No. 70363.**

Court of Criminal Appeals of Texas, En Banc.

April 26, 1989.

Emmett Colvin, David W. Coody, Dallas, for petitioner.

Jim Mattox, Atty. Gen. and Mary F. Keller, F. Scott McCown, Louis McCreary, Michael P. Hodge and C. Rex Hall, Asst. Attys. Gen., Austin, for respondent-appellee.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON CERTIFIED QUESTION FROM THE FIFTH CIRCUIT COURT OF APPEALS

PER CURIAM.

This cause is before us, along with *Clay v. Lynaugh*, 770 S.W.2d 800 (Tex.Cr.App., delivered this day), on certified question from the United States Court of Appeals for the Fifth Circuit, pursuant to Tex.R. App.Pro., Rule 214. The Fifth Circuit held that this Court's retroactive application of *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr.App.1982) (Opinion on rehearing), to deprive Rubino of the benefit of the so-called "carving doctrine," denied him due process and "undermined the constitutional prohibition on *ex post facto* laws...." *Rubino v. Lynaugh*, 845 F.2d 1266, 1268 (CA5 1988). Nevertheless, "uncertain how the doctrine would operate in this case," the Fifth Circuit certified to this Court "the single, dispositive question whether the rule, treated as if still in effect, would have barred Rubino's second prosecution and conviction." *Id.*

In accordance with Rule 214(c)(2), supra, the parties stipulated to the following facts:

"George Rubino was convicted of the aggravated kidnapping of Herbert Weitzman on August 2, 1978. Following that conviction, he was prosecuted and convicted in this case for the attempted murder of the same Herbert Weitzman. The evidence adduced at both George Rubino's trial, which was exactly the same for plea in bar purposes, showed that the complainant, Herbert Weitzman, was accosted by Rubino, in the parking garage of Weitzman's office building. Rubino pulled a gun and told Weitzman to get into his car. He told Weitzman that if he cooperated he might not get hurt. They then drove toward south Grand Prairie, Texas, on Rubino's instructions. Rubino told Weitzman he was taking him to a grave he had dug. As he was making a turn, Weitzman jumped out of the moving car and began running. After 30 seconds, Weitzman heard a gunshot, and when he looked over his shoulder, he saw Rubino fire at him."

The precise question certified to this Court is: "Based upon the facts recited [above], would the Texas carving doctrine, treated as if still in effect, have barred Rubino's prosecution and conviction for attempted murder?" 849 F.2d 906.

In *McWilliams* the Court identified at least two tests for applying the carving doctrine:

"Initially, carving was applied when the two offenses charged contained common material elements or when the two offenses required the same evidence to convict. *Herera v. State*, 35 Tex.Cr.R. 607, 34 S.W. 943 (1896). This Court added the 'continuous act or transaction' test in *Paschal v. State*, 49 Tex.Cr.R. 111, 90 S.W. 878 (1905). Since that time the 'same evidence' and the 'continuous assaultive transaction' tests have been randomly applied."

634 S.W.2d at 823. See also: *Orosco v. State*, 590 S.W.2d 121 (Tex.Cr.App.1979) (Douglas, J., dissenting); *Ex parte Fitch*, 580 S.W.2d 372 (Tex.Cr.App.1979) (Clinton, J., dissenting). The State now invites this Court to apply the "same evidence" test, and to disown the "continuous assaultive transaction" test. This we decline to do. Rather than attempt to reform the doctrine to resolve perceived inconsistencies in application, this Court chose simply to "abandon" it altogether. *Ex parte McWilliams*, supra, (Roberts, J., dissenting). Under such circumstances it would hardly seem equitable to refine the doctrine at this late date, by eliminating the "continuous assaultive transaction" test, to deny this petitioner relief. Instead we will measure the stipulated facts against each test in turn to determine whether the carving doctrine applies. *Ex parte Fitch*, supra, (Clinton, J., dissenting).

■ We find petitioner's prosecution and conviction would not be barred under the "common material element" or "same evidence" test. While it is true that assaultive conduct was alleged in both indictments, it was not imperative for the State to prove the same assaultive act to convict petitioner of both aggravated kidnapping and attempted murder. As noted by the Fifth Circuit, albeit in the course of its federal jeopardy analysis, 845 F.2d at 1270, evidence of events occurring before Weitzman attempted to make his escape and was fired upon, including petitioner's use of the gun and assertion that their destination was Weitzman's already-dug grave, was ample to establish all of the elements necessary to prove aggravated kidnapping. Likewise, all elements of the attempted murder were established by events occurring at the time of the escape and shooting, without recourse to the earlier assaultive conduct. That proof of each offense would be admissible as res gestae at trial of the other does not mean they share "common material elements" or necessarily rely on the "same evidence" for conviction.

More difficult is whether the stipulated facts above meet the "continuous assaultive transaction" test. The Court has identified a "common thread" running through the cases by which a "transaction" may be understood to be an "uninterrupted and continuous sequence of events or assaultive acts." *Hawkins v. State*, 535 S.W.2d 359, 362 (Tex.Cr.App.1976). Indeed, in *Ex parte Evans*, 530 S.W.2d 589 (Tex.Cr.App. 1975), the Court found the "sequence of events was continuous and did not break the chain of antecedent violence perpetrated upon the complaining witness[,]" and therefore held that the applicant's second conviction for theft, which does not even have an assaultive component, was barred by his earlier conviction for robbery by assault. On the other hand, in applying the "continuous assaultive transaction" test the Court has frequently insisted upon proximity of time and place. E.g., *Douthit v. State*, 482 S.W.2d 155 (Tex.Cr.App.1971) (Victim sexually assaulted a number of times, but over the course of several days, and in two different counties); *Lamberson*

*v. State*, 509 S.W.2d 328 (Tex.Cr.App.1974) (Victim robbed, beaten and abandoned, semi-conscious, in an isolated area, but a short time later the defendant returns and kills him). Each party now selects one among these cases to champion its cause. The State invokes *Ex parte Caldwell*, 537 S.W.2d 265 (Tex.Cr.App.1976), while petitioner submits *Ex parte Birl*, 545 S.W.2d 169 (Tex.Cr.App.1977).

In *Ex parte Caldwell*, supra, the Court reasoned:

"The record reflects two separate assaults by [the defendant] upon the complainant. The first occurred when [the defendant], as a principal with his companion, assaulted her outside the building, forced her to enter the store, and by using firearms and threats, robbed her. When [the defendant] took her into another room of the building and raped her, this constituted an additional assault occurring in a different place at a different time, and was a separate transaction, and a separate offense."

*Id.*, at 266. The Court found no violation of carving under these facts. In *Ex parte Birl*, supra, the applicant and a companion robbed a grocery store clerk. Under a version of events assumed true, *arguendo*, by the Court, the applicant started out the door after his companion had secured the money from the cash register. Seeing the clerk move behind the counter, however, the applicant reached over and shot him several times, killing him. The Court rejected the State's contention that the "few seconds while [the applicant] stood in the doorway" was "sufficient in itself to interrupt the assaultive action." Therefore the applicant's murder conviction was held to be barred by his prior conviction for robbery.

The question seems to boil down to whether the facts stipulated in this case are more like those of *Caldwell* than of *Birl*. Rather than mediate this contest of analogues, however, we will proceed analytically from the language of the "common thread" we discerned in *Hawkins v. State*, supra. In this context we note that the concept of "transaction" that was at

work in *Ex parte Caldwell,* supra, is inconsistent with the notion that a "transaction" may be comprised of "an uninterrupted and continuous sequence of events or assaultive acts." 535 S.W.2d at 362. Of course, *Caldwell* does not allude to the statement of the test in *Hawkins.* Applying *Hawkins'* language to the facts of *Caldwell,* unless we are to accept that simply taking the victim into a back room (no doubt at gunpoint) constituted a sufficient break in time and place to "interrupt" the continuity of the "assaultive acts," we must conclude *Caldwell* is an anomalous application of the test. We refuse to follow *Caldwell* here.

Instead we will inquire whether the attempted murder of Weitzman was part of an uninterrupted sequence of assaultive acts perpetrated against him by this petitioner. Essentially we must determine whether Weitzman's escape, and the thirty odd seconds separating that event from the first shot fired at him as he fled, make for a sufficient break in time and place to interrupt the continuity of the assaultive conduct. These facts are distinguishable from those in *Douthit v. State,* or *Lamberson v. State,* both supra, which involved substantial periods of time between the assaultive acts. Here the threat of use of deadly force to perpetrate his abduction persisted up until the moment of Weitzman's fortuitous escape. Within a matter of seconds, presumably as soon as petitioner could bring the car safely to rest, that threat matured into actual use of deadly force. We perceive no interruption or deviation from petitioner's fundamental pur-

pose—to kill Weitzman. We hold that the differences of time and place between the original assaultive act in the parking garage and the attempt to kill on the roadside were not such as to break the continuity of petitioner's overall assaultive conduct.

We therefore conclude petitioner Rubino's prosecution for attempted murder would have been barred by the carving doctrine, and thus we answer the certified question in the affirmative.

Motion for rehearing will not be entertained.

TEAGUE, Judge, dissenting and concurring.

This cause appears to be the very first case in which this Court is called upon to answer a certified question from the United States Fifth Circuit Court of Appeals in its cause of *Rubino v. Lynaugh,* 845 F.2d 1266 (5th Cir.1988), which is being done pursuant to the provisions of Rule 214(a), *Texas Rules of Appellate Procedure.*[1] See and compare *Greene v. Massey,* 595 F.2d 221 (5th Cir.1979), and *Greene v. Massey,* 384 So.2d 24 (Fla.1980). Also see *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Therefore, I am reluctant to file a dissenting opinion to such an historical occasion. Nevertheless, I believe that my duty as a judge of this Court requires me to do just that.

I stress that this cause is not before this Court either on direct appeal, through a petition for discretionary review proceeding, on remand from the United States

---

1. Rule 214(a), expressly provides:

 (a) Certification of Questions of Law. The Court of Criminal Appeals may answer questions of state criminal law certified to it by the Supreme Court of the United States or a United States Court of Appeals when requested by the certifying court, if there are involved in any proceedings before the certified court questions of criminal law of this state which may be determinative of the cause then pending and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the Court of Criminal Appeals. The Court of Criminal Appeals may, in its discretion, decline to answer the questions certified to it.

 Interestingly, I have not yet found any provision in the Rules of Appellate Procedure that

would authorize this Court to answer a submitted certified question from one of the courts of appeals of this State. In fact, in *Trevino v. State,* 655 S.W.2d 209 (Tex.Cr.App.1983), this Court so held. However, this is not true on the civil side of the docket. See Rule 110, *Tex.R.App. Proc.,* which provides that the court of appeals may certify one or more controlling questions of law to the Supreme Court of Texas for decision.

 On July 13, 1988, acting pursuant to its discretionary powers under Rule 214(a), *Texas Rules of Appellate Procedures,* this Court decided to answer the following certified question from the Fifth Circuit:

 "Would the Texas carving doctrine, treated as if still in effect, have barred Rubino's [petitioner's] prosecution and conviction for attempted murder?"

Supreme Court, or on remand from the Fifth Circuit Court of Appeals, but is before this Court strictly pursuant to Rule 214(a).

I find that when this Court is asked by either the United States Supreme Court or a United States Court of Appeals to answer a certified question pursuant to Rule 214(a), before doing so, it should exercise its jurisdiction and authority with extreme care in the premises, and not write an opinion just for the sake of answering a proffered question from another tribunal, or just write an opinion that amounts to doing the research on an issue for the other tribunal. My biggest concern in this Court answering submitted certified questions probably lies in the fact that to answer such a question actually amounts to writing an advisory opinion on a case that is not then pending before this Court for it to dispose of.

Rule 214(a), expressly provides that the decision whether or not to answer any certified question is strictly discretionary with this Court. For reasons that I will give, and in all due respect to the members of the Fifth Circuit, I do not believe that this is the proper case in which this Court should answer the submitted certified question. Therefore, my vote is to put this Court's "improvidently granted" stamp to its earlier decision to answer the submitted certified question. The majority votes otherwise. Therefore, I am compelled to file this dissenting opinion.[2]

I file this dissenting opinion because I cannot conclude that answering the submitted certified question "may be determinative of the cause now pending" in the Fifth Circuit, which is a prerequisite before the provisions of Rule 214(a) should be invoked. Another prerequisite of the rule is that "there is no controlling precedent in the decisions of the Court of Criminal Appeals." In this instance, I find that there is more than ample "controlling precedent,"

all favorable to petitioner, that the Fifth Circuit could rely upon, if it chose to do so.

Because I agree that the answer to the certified question that has been assigned by the Fifth Circuit Court of Appeals to this Court to answer should be answered in the affirmative, I agree with the affirmative answer that the majority opinion gives to the question. Therefore, I concur.

In 2 *Texas Criminal Practice*, in § 51.02, at page 51–11, the following is stated:

> The doctrine of carving is a judicially created principle which prohibited successive prosecutions for offenses, even though separate and distinct, which arise from the same transaction and require the same basic evidence for conviction ... The carving doctrine also prohibited the prosecution from carving more than one conviction out of a continuous assaultive act committed upon the same person during the same transaction. Thus, if a defendant commits several offenses which are separate and distinct in contemplation of law, the carving doctrine would prohibit more than a single conviction given circumstances that they were all committed in a continuous assault and proved by the same acts and evidence ... The carving doctrine is [however] no longer recognized in Texas....

When George Anthony Rubino, henceforth petitioner, committed the offenses of aggravated kidnapping and attempted murder, as well as when his direct appeal from his attempted murder conviction was submitted to this Court, the doctrine of carving was then live, well, and breathing like a mighty lion of the jungle. However, in *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr. App.1982) (on rehearing), the mighty lion was put to death and cremated by a majority of this Court, because "it increased crime."

---

2. Of course, my decision in this cause not to write on the submitted certified question does not mean that this Court should never answer certified questions that are submitted to it by the United States Supreme Court or a United

States Court of Appeals. However, it should always be the extremely rare occasion when this Court should answer a submitted certified question either from the Supreme Court of the United States or a United States Court of Appeals.

Petitioner has long asserted that his conviction for attempted murder was barred under this Court's doctrine of carving, as well as the double jeopardy clauses of the Federal and State Constitutions, because he had previously been convicted of the offense of aggravated kidnapping, which arose out of the same continuous assaultive transaction. Both offenses occurred on the same day in Dallas. The same individual was the victim in both cases. Petitioner's convictions were based on the same evidence, i.e., the evidence that went to one went to the other. The facts of the two offenses, which arose out of the same continuous assaultive transaction, are rather simple.

Petitioner and his victim had been adversaries in litigation over a contract. Petitioner abducted his victim at gunpoint in Dallas one day and forced his victim to drive them towards Grand Prairie, during which his victim jumped out of the moving vehicle and began running. Soon thereafter, petitioner simultaneously, but unsuccessfully missing his mark, his victim, fired two shots from his pistol at his victim.

Petitioner was first tried and convicted by a jury for committing the offense of aggravated kidnapping his victim. The jury assessed his punishment at fifteen years' confinement in the Department of Corrections. Thereafter, subject to his pleas of double jeopardy and the doctrine of carving, petitioner pled nolo contendere to the offense of attempted murder. The trial court overruled his pleas and found petitioner guilty, after which the trial court assessed his punishment at ten years' confinement in the Department of Corrections. The second sentence is to be served consecutively to the first sentence.

On direct appeal, this Court on June 9, 1982, in an unpublished opinion, relying principally upon this Court's recent decision of *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr.App.1982) (On rehearing), which was handed down during the previous month on May 12, 1982, rejected petitioner's contentions and affirmed the trial court's judgment and sentence. See *Rubino v. State*, 634 S.W.2d 729 (Tex.Cr.App. 1982).

After this Court rejected petitioner's contention on direct appeal, he filed an application for the writ of habeas corpus (postconviction), in which he made the same assertions that he raised on direct appeal. He additionally claimed that this Court erred by retroactively applying its decision of *Ex parte McWilliams* to his case. On September 25, 1985, this Court denied petitioner's application without written order. See *Ex parte Rubino*, Tex.Cr.App. Writ No. 15,-231–01.

Having exhausted his state remedies, petitioner then pursued his claim for relief in the federal court system. A United States District Court denied him relief. He then appealed to the Fifth Circuit Court of Appeals, where his cause is now pending, see *Rubino v. Lynaugh*, apparently subject to this Court answering the above certified question from that Court.

It appears to me that what prompted the Fifth Circuit to ask this Court to answer the above certified question lies in the fact that that Court, after reading this Court's decision of *Ex parte McWilliams*, 634 S.W. 2d 815 (Tex.Cr.App.1982) (On rehearing), decided May 12, 1982, in which a majority of this Court voted to abandon this Court's doctrine of carving, because "it encourages crime," [3] perceived there was an absence of "controlling precedent" due to the criticism of the doctrine that is contained within the majority opinion of *Ex parte McWilliams*. The Fifth Circuit also observed that in *Ex parte Clay*, 675 S.W.2d 765 (Tex.Cr.App. 1984), cert. denied, 470 U.S. 1029, 105 S.Ct.

---

**3.** Given the fact that our inmate population has increased several fold since this Court abandoned the carving doctrine in *Ex parte McWilliams*, because it increased crime, and the fact that today at least one part of our criminal justice system exists in total chaos, is it not now permissible to argue that the abandonment of the carving doctrine has actually encouraged crime? Perhaps, given the fact that our Department of Corrections is so full, to the extent that all individuals who should be incarcerated in the Department of Corrections are not because there is no room for them in the Big House, it may now be proper for this Court to reinstate the doctrine of carving. Why? Shades of *Ex parte McWilliams*, to decrease crime, of course!!!

1399, 84 L.Ed.2d 787 (1985), this Court ruled that "*Ex parte McWilliams* is to be given full retroactive application to all cases whether they arise on collateral review or direct appeal." (768).

I find that, regardless of the unjustified criticism of the doctrine of carving that is contained within the majority opinion on rehearing in *Ex parte McWilliams*, such criticism did not serve to undermine the precedential value of such prior decisions of this Court that invoked and favorably applied to defendants the doctrine of carving in a particular cause.

The Fifth Circuit Court of Appeals appears to have already ruled in *Rubino v. Lynaugh* that retroactive elimination of the doctrine of carving to affirm Rubino's attempted murder conviction violated both the due process of law and the ex post facto clauses of the Federal Constitution. This holding effectively overruled this Court's decision of *Ex parte Clay*. The Fifth Circuit's holding is, of course, conditioned upon the finding that the carving doctrine was in existence either when Rubino committed his offenses or when his cause was submitted to this Court. In this instance, in all due respect to the Fifth Circuit Court of Appeals, hasn't that Court placed the cart before the horse, i.e., hasn't it written on the "cart" and now wants this Court to write on the "horse"?

There are a legion of cases from this Court, all of which predate the opinion on rehearing in *Ex parte McWilliams*, in which, under similar if not almost identical facts to those in this cause, this Court granted numerous defendants relief for the same reason that petitioner bases his claim for relief in this cause. It is unknown at this time just how many defendants also received relief under the doctrine of carving through per curiam unpublished opinions of this Court. However, it stands to reason that given the number of published opinions in which this Court granted defendants relief under the carving doctrine, it is obvious that many defendants received relief in unpublished opinions of this Court.

It appears to me that if the Fifth Circuit had carefully read this Court's 8–1 majority opinion on original submission in *Ex parte McWilliams* it could have easily concluded that there was no necessity to certify the above question to this Court to answer, for that opinion correctly set out the law regarding the doctrine of carving that existed prior to when the majority opinion on rehearing was filed in *Ex parte McWilliams*.

On original submission in *Ex parte McWilliams* eight members of this Court, namely Judge Tom Davis who authored the opinion, Presiding Judge Onion, and Judges Roberts, Odom, Phillips, W.C. Davis, Clinton, and Dally, approved the opinion on original submission. Judge Douglas was the only judge to dissent. On rehearing, Presiding Judge Onion, and Judges Roberts and Clinton held firm and did not vote for the majority opinion. In the interim, Judges McCormick and Teague became members of the Court, replacing Judges Douglas and Phillips. Amazingly, Judge Tom Davis, who wrote the 8–1 majority opinion on original submission, which held that the carving doctrine was applicable to that cause, reversed his vote and voted with the majority opinion, thus causing the majority opinion to squeak by 5–4, with Judge Dally authoring the opinion, and with Judges Odom, Tom Davis, W.C. Davis, and McCormick voting for the majority opinion, and Presiding Judge Onion and Judges Roberts, Clinton, and Teague voting against the majority opinion. Had Judge Tom Davis held firm to what he stated in the original 8–1 opinion that he wrote for the Court, this Court would not have voted on rehearing to abandon the doctrine of carving. Neither Judge Tom Davis, who authored the original majority opinion, nor Judges Odom and W.C. Davis, who voted for the original majority opinion, wrote on rehearing to explain what might have caused them to change their votes in such a brief period of time.

Published opinions of this Court, in which this Court had formerly invoked and applied the carving doctrine to a case, and granted a defendant relief from multiple convictions, actually include *Ex parte McWilliams*, on original submission. For other cases which so held, see *Ex parte*

*Scott,* 633 S.W.2d 823 (Tex.Cr.App.1980) (On original submission), which cited *Orosco v. State,* 590 S.W.2d 121, 124 (Tex.Cr. App.1979), and *Tatum v. State,* 534 S.W.2d 678 (Tex.Cr.App.1976), as authority; *Ex parte Rodriquez,* 600 S.W.2d 835 (Tex.Cr. App.1980), which cited *Ex parte Harris,* 583 S.W.2d 419 (Tex.Cr.App.1979), and *Ex parte Calderon,* 508 S.W.2d 360 (Tex.Cr. App.1974), as authority; *Phillips v. State,* 597 S.W.2d 929 (Tex.Cr.App.1980), which also cited *Orosco* and *Calderon* as authority; and *Ex parte Mike,* 632 S.W.2d 594 (Tex.Cr.App.1982) (On original submission), which also cited *Ex parte Harris* and *Orosco* as authority; *Ellis v. State,* 502 S.W.2d 146 (Tex.Cr.App.1973); *Ex parte Evans,* 530 S.W.2d 589 (Tex.Cr.App.1975); *Ex parte Hilliard,* 538 S.W.2d 135 (Tex.Cr. App.1976); *Ex parte Jewel,* 535 S.W.2d 362 (Tex.Cr.App.1976); *Ex parte Farris,* 538 S.W.2d 134 (Tex.Cr.App.1976); *Ex parte Thomas,* 538 S.W.2d 622 (Tex.Cr.App.1976); *Ex parte Adams,* 541 S.W.2d 440 (Tex.Cr. App.1976); *Ex parte Birl,* 545 S.W.2d 169 (Tex.Cr.App.1977); *Ex parte Olson,* 560 S.W.2d 688 (Tex.Cr.App.1978); *Ex parte Prince,* 549 S.W.2d 753 (Tex.Cr.App.1977); *Ex parte Rodriguez,* 560 S.W.2d 94 (Tex. Cr.App.1978); *Ex parte Barron,* 568 S.W. 2d 362 (Tex.Cr.App.1978); *Hancock v. State,* 495 S.W.2d 222 (Tex.Cr.App.1973); *Harris v. State,* 499 S.W.2d 139 (Tex.Cr. App.1973); and *Thompson v. State,* 495 S.W.2d 221 (Tex.Cr.App.1973). This vast array of authority makes it clear to me that there is ample controlling precedent for the Fifth Circuit to use if it chooses to do so in order to resolve the instant criminal law question without the necessity for it to have submitted to this Court the above certified question.

I will acknowledge that cases by this Court may exist which might appear to have rejected the applicability of the carving doctrine to a particular case, even when justice cried out for such to occur. The State in this cause, of course, relies upon those cases. However, a close examination of those cases which were written after January 1, 1970, makes it clear that three of the opinions on which the State relies were not written by members of this Court, but were in fact written by commissioners of this Court. Only one case on which the States relies, *Douthit v. State,* 482 S.W.2d 155 (Tex.Cr.App.1972), was actually written by a member of this Court, Judge Douglas, who was long a proponent for the abolition of the carving doctrine, and it passed by a meagre 3–2 vote, with Presiding Judge Onion and Judge Morrison dissenting. Judges Roberts and Odom voted for the majority opinion. At that time this Court only consisted of five members. Given the fact that Judge Roberts was always a strong advocate of the carving doctrine, see, for example, the dissenting opinion that he filed in *Ex parte McWilliams* (on rehearing), I find that Judge Roberts' vote for the majority opinion in *Douthit* insignificant, when it comes to his position on the carving doctrine. Furthermore, the cases on which the State relies which should have, but did not correctly apply the doctrine of carving to the facts of the case, can only be described as aberrations on the subject, and, for this reason, if no other, have no real precedential value.

Therefore, I must strongly disagree with the Fifth Circuit Court of Appeals' conclusion that "We therefore have no authoritative state ruling on whether the doctrine [of carving] would bar the [petitioner's] second prosecution and conviction." [4]

I find that the above cases of this Court, which have invoked and applied the doctrine of carving favorably to a defendant, are more than sufficient authority to show that had this Court invoked and applied the doctrine of carving to petitioner's case

---

4. I believe that if one carefully reads and digests what this Court stated and held in *Ex parte Peterson,* 738 S.W.2d 688 (Tex.Cr.App.1987); *May v. State,* 726 S.W.2d 573 (Tex.Cr.App.1987); and *January v. State,* 732 S.W.2d 632 (Tex.Cr. App.1987), adopting *January v. State,* 695 S.W. 2d 215 (Tex.App.–13th 1985), it would appear that the doctrine of carving, like the Phoenix, has returned and is alive, well, and breathing, but is no longer appearing as the mighty lion of the jungle but now appears in the more acceptable form of "Double Jeopardy." Also see and compare what the Fifth Circuit has already stated and held in *Green v. Estelle,* 601 F.2d 877 (5th Cir.1979), and *De La Rosa v. Lynaugh,* 817 F.2d 259 (5th Cir.1987).

when it was before this Court on direct appeal, or even when it was before this Court in the postconviction stage of the process, this Court would have granted petitioner relief and ordered the attempted murder conviction set aside. The majority opinion correctly answers the certified question in the affirmative.

For all of the above reasons, I concur and dissent.