**Gary GUIDRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 13–93–109–CR, 13–93–110–CR, and 13–93–111–CR.

Court of Appeals of Texas,
Corpus Christi.

July 7, 1994.

Rehearing Overruled Aug. 25, 1994.

Discretionary Review Refused
Dec. 7, 1994.

Craig Smith, Smith & Edwards, Corpus Christi, for appellant.

Carlos Valdez, James Rosenkild, Corpus Christi, for appellee.

Before KENNEDY, FEDERICO G. HINOJOSA, Jr. and YAÑEZ, JJ.

## OPINION

KENNEDY, Justice.

Gary Guidry pled guilty without a plea bargain to two aggravated robberies and one aggravated sexual assault. The court sentenced him to three consecutive life sentences. By two points of appeal, he challenges the stacking of the sentences. We modify the judgment and, as modified, affirm.

At punishment, a psychologist called by Guidry opined that Guidry has an antisocial personality. The source of that personality is uncertain. Whether it stemmed from genetics, inconsistent discipline, family dysfunction, or sexual abuse by a mentally retarded older brother, the personality was entrenched by the time he committed these offenses. Guidry was an arrested adolescent, letting no one and nothing stand between him and what he wanted. He had committed a number of crimes ranging from shoplifting to car theft to aggravated robbery throughout his teen years. He also used drugs and alcohol, including on the night he began his spree in Corpus Christi.

In November 1992, at age 19, Guidry decided to travel from his home in Houston.

He stole a car in Dickinson. He drove to Corpus Christi, stealing gasoline three times on the way. In the early morning he entered a convenience store on North Padre Island. When the female clerk, who was working alone, came from behind the counter to assist Guidry, he put his arm around her neck, displayed a knife, and told her not to do anything or he would hurt her. He took her to the cash register and got money.

He then took her with him, but told her he would not hurt her unless she tried something. He forced her into the car and drove toward Flour Bluff on the mainland. After crossing the bridge over the intracoastal canal, he pulled over in an unlit area. He ordered her out of the car and told her to remove her clothes or he would hurt her. He forced her back into the car and raped her. He then told her to get out of the car. He took off, and she walked back to her store.

Meanwhile, he travelled back into Corpus Christi proper and wrecked the car on the freeway. He fled the scene and hid on top of a school building until the sun rose. Police found a knife and clothing in the car. Guidry then walked to a motel and checked in. He bought another knife, went back to the motel, and ate.

That afternoon he walked to a hospital parking lot. A woman drove up and parked. As she got out of her car, Guidry approached her with the knife, told her to get back into the car, grabbed the keys, and drove off while holding the knife against the woman. He asked for directions to the freeway. When traffic stopped the car, she escaped. Guidry tried to escape on foot, but was caught. Guidry confessed to committing the three crimes. The State asked that the court sentence Guidry to two concurrent life terms for the first offenses. For the third offense, the State also requested a life term to run consecutively to the other two.

The court sentenced Guidry to three life terms, and found that none of the offenses were in the same criminal episode. This conclusion caused the court to sentence Guidry to three consecutive life terms.

Guidry contends that the court erred in cumulating his sentences. Generally, when a defendant has multiple convictions pending, the court has the discretion to cumulate the sentences of the second and subsequent offenses. TEX.CODE CRIM.PROC.ANN. art. 42.-08(a) (Vernon Supp.1994). This general discretion is limited whenever multiple offenses arising from a single criminal episode are tried in a single criminal action; in such cases, the court cannot order cumulated sentences. TEX.PENAL CODE ANN. § 3.03 (Vernon 1974).

The parties agree that the crimes were tried in a single criminal action. We must therefore determine whether the offenses were committed in a single criminal episode. A "criminal episode" means the commission of two or more offenses regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances: (1) the offenses are part of the same transaction or are pursuant to two or more transactions that are connected or constitute a common scheme or plan, or (2) the offenses are the repeated commission of the same or similar offense. TEX.PENAL CODE ANN. § 3.01 (Vernon Supp.1994). We evaluate the sentencing for an abuse of discretion. *See Alvarado v. State,* 840 S.W.2d 442, 442 (Tex.Crim.App. 1992).

We find that the crimes involving the convenience store clerk fall under the first definition in Penal Code § 3.01.

Opinions written on this issue since the first subsection was added in 1987 are scarce. Those published deal with the interpretation of other segments of § 3.01 or other sections of Chapter 3. *See Duran v. State,* 844 S.W.2d 745, 746 (Tex.Crim.App.1992) (convictions for possession of cocaine and marihuana not shown to be in same criminal *action* ); *Alvarado,* 840 S.W.2d at 442 (defining single criminal *action,* not episode, under 3.03); *Sanchez v. State,* 813 S.W.2d 610, 612 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (allowing *concurrent,* not consecutive, sentences for multiple crimes accepted as being in a single criminal episode). One case interprets the relevant subsection to find a single criminal episode, with the only factual exposi-

tion being that "[t]he two occurrences leading to appellant's convictions for sexual assault and aggravated robbery took place within minutes of each other, and were pursuant to the same criminal transaction." *Kela v. State,* 786 S.W.2d 81, 82 (Tex.App.—San Antonio 1990, pet. ref'd).

This temporal focus picks up a thread from a line of cases connected to the now-abandoned carving doctrine. *See Rubino v. Lynaugh,* 770 S.W.2d 802, 804 (Tex.Crim.App. 1989).[1] In *Rubino,* the defendant abducted the victim and told him he was driving him to a grave. *Id.* at 803. When the victim jumped out of the car and tried to escape, the defendant shot at him within 30 seconds. *Id.* The court found that the kidnapping was in the same criminal transaction, an uninterrupted series of assaultive events, as the attempted murder. *Id.* at 805. The court had earlier found separate crimes when a defendant who raped a victim many times over the course of several days' forced travel to different counties. *Douthit v. State,* 482 S.W.2d 155, 161 (Tex.Crim.App.1971). The court defined this as a "single continuous assaultive action during which several other transactions and completed crimes occurred." *Id.* The court also found separate crimes when a defendant robbed a victim at gunpoint, then took her to a back room and raped her. *Ex parte Caldwell,* 537 S.W.2d 265 (Tex.Crim.App.1976). The *Rubino* court dismissed *Caldwell* as an anomaly. *Rubino,* 770 S.W.2d at 805.

The court of criminal appeals pulled together examples of "criminal transactions" from various contexts in interpreting that term for the capital murder statute. *Rios v. State,* 846 S.W.2d 310, 314 (Tex.Crim.App.

1992) (relevant section now codified at TEX.PENAL CODE ANN. § 19.03(a)(6)(A) (Vernon Supp.1993)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993). The court found the term had been construed to mean " 'a continuous and uninterrupted chain of conduct occurring over a very short period of time ... in a rapid sequence of unbroken events' " as well as a construct that " 'terminates with cessation of conduct—ordinarily in a relatively brief period of time.' " *Id.* (citations omitted). The court also used the *Rubino* interpretation. *Rios,* 846 S.W.2d at 314. The court found that the evidence supported a jury's finding of a single transaction when a defendant, at some point during an eight-hour period, killed two new acquaintances in the same manner with the same weapon and left their bodies only a few feet apart. *Id.*

We find that the robbery of the store and the sexual assault of its clerk were sufficiently linked by time, place, and manner that the court abused its discretion in concluding that the offenses were not part of the same criminal transaction or were not connected. If not occurring in the same transaction, these offenses were clearly connected. The robbery led to the uncharged abduction that led to the assault. The crimes involved the same actors and the same mode of force. The entire episode took less than an hour. Both crimes were part of an unbroken assaultive episode. We sustain point one.

■ By point two, Guidry contends that the court erred in stacking the sentences for the two aggravated robberies. His argument ignores the fact that the second robbery was not in the same criminal episode as or otherwise connected to the sexual assault.[2] The

---

1. The carving doctrine allowed the prosecution to carve the largest or most serious crime out of a series of crimes that were part of a single criminal transaction; this doctrine was abolished in *Ex parte McWilliams,* 634 S.W.2d 815, 822 (Tex.Crim.App.1980) (opinion on rehearing) (defendant convicted of aggravated kidnapping, aggravated robbery, and aggravated robbery within the same criminal episode), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). The doctrine required carving if the offenses were part of a continuous act or transaction. *Id.* at 823.

    The doctrine also required carving when the multiple crimes contained common material ele-

ments or required the same evidence to convict. *Id.* The concerns in cases on this branch of the test were very similar to concerns raised by constitutional provisions barring double jeopardy. *Orosco v. State,* 590 S.W.2d 121, 124 (Tex.Crim. App. [Panel Op.] 1979).

    For our purposes, we look only at the continuous act or transaction line of cases.

2. The court announced that the sentence for the second robbery would run consecutively to the sentence for the first robbery. The court had just previously announced that the sentence for the first robbery would run consecutively to the sentence for the sexual assault. The necessary im-

second robbery and the sexual assault were separated by place and significant time—almost twelve hours; they were not part of an unbroken chain of assaultive conduct. The second robbery was clearly not the repeated commission of the same or similar offense of sexual assault. Because the second robbery was part of a criminal episode separate from the sexual assault, the court did not err in stacking these sentences. We overrule point two.

We modify the judgment of the trial court to reflect two concurrent life sentences for the offenses involving the clerk, with the life term for the third offense running consecutively to those sentences. As modified, we affirm.

plication of the court's sentence is that the sentence for the second robbery must run consecutively to the sentence for the sexual assault as well, otherwise they would have been concurrent.