

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-1712-13
---

**DONALD AEKINS, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### TRAVIS COUNTY
---

KEASLER, J., filed a concurring opinion, in which KELLER, P.J., and HERVEY, J., joined.

### C O N C U R R I N G   O P I N I O N

The Court's opinion is not without intuitive appeal—penetration is impossible without contact, and therefore they are the same act. And if the opinion were to end there, I would be inclined to join it. But the same intuitive appeal can be found in Presiding Judge Keller's concurring opinion that reaches the same conclusion by applying familiar jurisprudence without the "same, single impulse" abstraction. As described in the Court's opinion, it is just

that, an abstract concept. The "impulse" concept of double jeopardy rolls in like thick fog, and courts and practitioners are sure to lose their way.

The Court claims that the impulse theory is United States Supreme Court law that we are not free to ignore or denigrate.[1] We should also not misconstrue it. *Blockburger v. United States*[2] does not support the Court's application of its impulse theory here. *Blockburger*'s mention of a defendant's impulse merely helped define whether an offense, not an act, was continuous in nature or consisted of separate offenses. The Court's opinion includes a single line of *Blockburger*'s quotation from Wharton's Criminal Law treatise in support of its position: "when the impulse is single, but one indictment lies, no matter how long the action may continue."[3] However, this line is followed by several others that undermine the Court's conclusion of this single sentence's meaning. *Blockburger* continued,

> 'If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.' Wharton's Criminal Law (11th Ed.) § 34. Or, as stated in note 3 to that section, 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty.'[4]

Therefore, even the first part of *Blockburger*—the "first test" as the Court refers to it—is inevitably a question of legislative intent. *Blockburger* did not address whether individual

---

[1] *Ante*, op. at 8.

[2] 284 U.S. 299 (1932).

[3] *Ante*, op. at 9.

[4] *Blockburger*, 284 U.S. at 302.

actions are considered "part and parcel" of a single completed offense without examining the statute prohibiting the conduct. The Court ascribes special meaning to the term "impulse" beyond the *Blockburger* Court's intent when it delivered its opinion in 1932. And it surely does not reflect the Supreme Court's current view after its rejection of the "same conduct" approach.[5]

Although our current double-jeopardy law can be exceedingly complex at times, our recent decisions have clarified the subtle distinction between "elements" and "units" analyses. But the Court's opinion seems to disregard these distinctions entirely. The Court's opinion provides no guidance on how the impulse theory will work. It does not even provide a rudimentary foundation. It is silent on a basic definition of a single impulse or how it is discovered. The larger issue of how the Court's impulse approach should be applied poses even greater uncertainty.

The recklessness of this theory is that it is seemingly boundless in its application. Without elaboration, it would institute a rule governing multiple-punishment cases when the offenses occur as a result of a single impulse. But is this rule to take the place of a units analysis? Or does it spread to all double-jeopardy contexts where previous analyses once controlled? Have the standards of statutory construction been replaced entirely by a court's consideration of a defendant's single impulse?

---

[5] *United States v. Dixon*, 509 U.S. 688, 704 (1993) (overruling the same-conduct test in *Grady v. Corbin*, 495 U.S. 508 (1990)).

Interestingly enough, the Court's approach contains many of the unsavory characteristics of the "carving doctrine" that this Court abandoned over thirty years ago. In *Ex parte McWilliams*, we addressed the carving doctrine, which precluded prosecutors from charging a defendant with multiple offenses arising from the same criminal act or transaction.[6] The carving doctrine, under its "continuous assaultive transaction" test, barred multiple convictions stemming from an unbroken "chain of antecedent violence perpetrated upon the complaining witness" when the events were closely related in proximity of time and place.[7] Despite this Court's adherence to the carving doctrine for over a century,[8] we held that it was unsound because its application had been erratic and "constitutions and statutes make no provision for such a doctrine."[9]

In *McWilliams*, the defendant was convicted of aggravated robbery, aggravated rape, and aggravated kidnapping, and complained that these multiple convictions violated the

---

[6] *Ex parte McWilliams*, 634 S.W.2d 815, 817 (Tex. Crim. App. 1980); *see also* 41 DIX AND SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 19:9 at 494–96 (3rd ed. 2011).

[7] *Rubino v. Lynaugh*, 770 S.W.2d 802, 804 (Tex. Crim. App. 1989) (citing *Hawkins v. State*, 535 S.W.2d 359, 362 (Tex. Crim. App. 1976)); *Ex parte Evans*, 530 S.W.2d 589, 592 (Tex. Crim. App. 1975)); *Cf. Herera v. State*, 34 S.W. 943, 943–44 (Tex. Crim. App. 1896) (discussing "same evidence" test, an alternative carving-doctrine theory, which was similar to today's *Blockburger* cognate-pleadings "elements" approach).

[8] 41 DIX AND SCHMOLESKY, § 19:9 at 494.

[9] *McWilliams*, 634 S.W.2d at 824 (op. on reh'g).

carving doctrine.[10]  In our original opinion, this Court held that these convictions arose from the same "continuous assaultive transaction" and vacated two of the three convictions.[11]  But then, on motion for rehearing, we decided to abandon the doctrine.  We initially noted that the carving doctrine was not mandated by the Double Jeopardy Clauses of either the United States or Texas Constitutions.[12]  Essentially, we found it to be based upon notions of "fairness," in that a prosecutor should only be allowed to take his "best shot" and obtain one conviction per assaultive criminal transaction.[13]

But notions of "fairness" alone were not enough to overcome the inherent unworkability of the rule.  First, what exactly constitutes a "transaction" of conduct?  We reviewed cases applying the carving doctrine and found them to be in conflict.  Sometimes courts would define a "transaction" in one way, sometimes another, and they appeared to vacillate depending on the facts of the case in question.[14]  And second, we found the carving doctrine unnecessary because the Supreme Court had already provided simpler, more

---

[10]  *Id.* at 817.

[11]  *Id.* at 818.

[12]  *Id.* at 822.

[13]  *Id.* at 822–23.

[14]  *Id.* at 824 (comparing *Lee v. State*, 505 S.W.2d 816 (Tex. Crim. App. 1974), *Ex parte Calderon*, 508 S.W.2d 360 (Tex. Crim. App. 1974), *Orosco v. State*, 590 S.W.2d 121 (Tex. Crim. App. 1978), and *Ex parte Joseph*, 558 S.W.2d 891 (Tex. Crim. App. 1977)).

workable tests to determine whether double-jeopardy principles had been violated.[15] These tests did not require judges to analyze the facts of the case to come to an arbitrary decision, but instead looked to legislative intent:

> This deference which the Supreme Court has shown to the United States Congress should also be shown by this Court to the Texas Legislature. Not only has the legislature clearly defined and separated criminal offenses; it has also made known, directly and indirectly, its intent insofar as multiple prosecutions are concerned.[16]

The same problems that rendered the carving doctrine unworkable inhere in the Court's incorporation of a "same impulse" rule. First, "impulse"—like "transaction"—remains undefined. What exactly constitutes a single impulse? What kind of proximity in time and space must the offenses have in order to be considered part of the same single impulse? Does this test encompass assaultive offenses only, or will it be expanded to cover other crimes? Second, deciding double-jeopardy issues on whether a defendant committed multiple offenses under a single impulse is likely to produce disparate conclusions in factually similar cases. Lastly, it drives the crux of a double-jeopardy analysis away from legislative intent and towards judicial interpretation of the facts of the case—a result the United States Supreme Court overruled in *United States v. Dixon*.[17]

The Court today injects more complication into an area of criminal law already

---

[15] *McWilliams*, 634 S.W.2d at 824 (op. on reh'g).

[16] *Id.* at 823.

[17] *Dixon*, 509 U.S. at 704 (overruling the same-conduct test in *Grady*, 495 U.S. at 508).

burdened by complexity. The Court introduces its "same impulse" concept into double jeopardy law without one word on how it is supposed to work. Whether a defendant operates with a singular impulse is left to the trial courts and the parties to figure out. This Court should endeavor to make the journey through double-jeopardy jurisprudence more navigable, not less. The uncertainty that the Court's opinion provides and the havoc it will wreak prevent me from joining the Court's opinion.


DATE FILED: October 22, 2014

PUBLISH